John L. BECK, Petitioner-Appellant,

v.

P. E. WILKES, Acting Warden, Federal Penitentiary, Respondent-Appellee.

No. 78–2894
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 431 F.2d 409, Part I.

John L. Beck, pro se.

William L. Harper, U. S. Atty., Curtis E. Anderson, Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

PER CURIAM:

John L. Beck, a federal prisoner confined in the Atlanta Federal Penitentiary, appeals from the district court's dismissal of his petition for habeas corpus, 28 U.S.C. § 2241. In 1972 Beck was sentenced in the Superior Court of the District of Columbia to 12 years' incarceration for armed robbery. He was paroled in 1975. On January 6, 1976, Beck was arrested in the District of Columbia for the intervening offenses of kidnapping while armed, rape, sodomy, and armed robbery. While awaiting trial on the new charges, a parole revocation warrant was executed on January 20, 1976, and Beck was accorded a preliminary revocation hearing on February 10, 1976. At the preliminary revocation hearing Beck denied he was guilty of the new charges but admitted that he had violated the conditions of his parole. On July 27, 1976, Beck was convicted on the new charges and given sentences on the various counts aggregating a minimum of 23 years' imprisonment with a maximum possibility of life. He was then sent to the federal prison in Lorton, Virginia. In Janu-

ary of 1977 Beck was transferred to the federal penitentiary in Atlanta, Georgia. At Atlanta he was granted a final parole revocation hearing in March of 1977. His parole on the original armed robbery conviction was revoked and he was given credit on that original sentence for the time spent in custody in the District of Columbia on the subsequent offenses.

The appellant claims that the 13-month delay between the execution of his parole revocation warrant and his final revocation hearing violated due process, citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). His position is without merit. Beck's loss of liberty after his July 1976 conviction was due to that conviction. It was not the result of the prior parole revocation procedures. However, those procedures did cause a loss of liberty for the period between the execution of the revocation warrant in January and his conviction in July, approximately 6 months.

■ The appellant's case is not governed by 18 U.S.C.A. § 4214(c), which now imposes a ninety-day limitation period for commencement of a final parole revocation hearing when a parolee has admitted a parole violation. Section 4214(c), part of the Parole Commission and Reorganization Act of 1976, 18 U.S.C.A. §§ 4201 *et seq.,* was not enacted until March 15, 1976. This occurred after the date of the warrant's execution and the preliminary hearing in Beck's case, but prior to the final hearing in March of 1977. In *United States v. Haas,* 576 F.2d 618 (5th Cir. 1978), we held that the law prior to the effective date of the Act governed parole eligibility for a person convicted prior to the Act's effective date even though he was sentenced after that date. Applying the same principle here, the pre-Act test of "reasonable time" set forth in *Morrissey* applies instead of the current statutory 90-day limit. Whatever the applicable time limitation, however, this circuit requires a showing of both unreasonable delay *and* prejudice before a person is entitled to release because of a delay in obtaining a final hearing. *Smith v. United States,* 577 F.2d 1025, 1027 (5th Cir. 1978).

*Smith* makes the two-prong test applicable even to violations of the Act's 90-day requirement. 577 F.2d at 1028–29.

■ The failure to hold a final hearing during the period in which Beck was awaiting trial on the new charges was not unreasonable or prejudicial. Beck was then under the authority of the District of Columbia—the same jurisdiction that had paroled him—pursuant to his arrest on the rape, sodomy, armed kidnapping, and armed robbery charges brought by that jurisdiction. *See Cook v. United States Attorney General,* 488 F.2d 667, 671 (5th Cir. 1974). Since Beck would not have been entitled to release after his July 1976 conviction even if he had not admitted parole violations and had prevailed at a final revocation hearing, no claim at all exists for the period from July of 1976 to March of 1977. Having demonstrated no prejudice and having already received a final hearing in March of 1977, Beck is entitled to no relief. *See Smith, supra,* 577 F.2d at 1029.

■ The appellant next contests the legality of his transfer from the federal facility at Lorton to the facility in Atlanta. There is no legal basis to support any challenge to this transfer. Once the appellant's parole violator's warrant was executed on January 20, 1976, he was in the Attorney General's custody. 18 U.S.C. § 4206. Prisoners convicted in any District of Columbia court, like other federal prisoners, are committed to the custody of the Attorney General. D.C.Code § 24–425; *Frazier v. United States,* 119 U.S.App.D.C. 246, 248, 339 F.2d 745, 747 (1964). Thus, from the date of the execution of the revocation warrant until the present, the appellant has been in the custody of the Attorney General. Under 18 U.S.C. § 4082(b), the Attorney General has the authority to "designate as a place of confinement any available, suitable, and appropriate institution or facility, . . . whether within or without the judicial district in which the person was convicted, and [to] at any time transfer a person from one place of confinement to another."

The Attorney General may similarly designate any federal prison facility as the place of imprisonment for prisoners convicted in the District of Columbia courts, and may transfer such prisoners from one institution to another at his discretion. D.C. Code § 24–425; *Beard v. Bennett,* 72 U.S. App.D.C. 269, 114 F.2d 578 (1940); *Beard v. Sanford,* 99 F.2d 750, 751 (5th Cir. 1938). See also 18 U.S.C. § 4083. This court has previously upheld the lawfulness of transfers of District of Columbia prisoners to Atlanta. *Farnsworth v. Zerbst,* 97 F.2d 255, 256 (5th Cir. 1938). The reasons for the transfer, whether disclosed to the prisoner or not, are immaterial so long as the transfer is to an institution permitted by 18 U.S.C. § 4082(b) or the District of Columbia Code, and the occasion of transfer does not give rise to any procedural due process rights. *See Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no due process requirements in transfer of state prisoners). The Attorney General could transfer the appellant from Lorton to Atlanta for any administrative reason, and the transfer is beyond challenge here. *See Floyd v. Henderson,* 456 F.2d 1117 ( 5th Cir. 1974).

Finally, the appellant contends that he is being unconstitutionally forced to serve his sentence in "installments." His complaint apparently is that he is currently serving his original 1972 sentence in the Atlanta penitentiary, and that it is unlawful for him to have to serve that original sentence at this time, on the theory that the District of Columbia's authority over him was relinquished upon his transfer to Atlanta. The district court found that Beck was currently serving time under his 1976 convictions. However, it is not necessary to review that finding. The "installment" theory upon which it is based is illogical in any event. As previously discussed, under both the 1972 and 1976 convictions Beck was committed to the custody of the Attorney General who could require that he be incarcer-

ated at any federal penitentiary. Regardless of the order in which his sentences are imposed, he will not serve extra time. *See Cooks v. United States Board of Parole,* 447 F.2d 63 (5th Cir. 1971).

AFFIRMED.