Carmine PERSICO, Plaintiff,

v.

Robert A. GUNNELL, as Warden of the Federal Correctional Institution at Danbury, Connecticut, and J. Michael Quinlan, as Warden of the Federal Correctional Institution at Otisville, New York, Defendants.

No. 82 Civ. 8565 (CBM).

United States District Court,
S.D. New York.

March 9, 1983.

Barry Ivan Slotnick, P.C., New York City, for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y. by Stephen A. Dvorkin, Asst. U.S. Atty., New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

This is an action for damages and injunctive relief in which plaintiff claims to have suffered violations of his rights under the Fifth, Eighth and Ninth Amendments to the Constitution by virtue of a series of inter-prison transfers. Plaintiff Carmine Persico (Persico) is a federal prisoner. De-

fendants, who are sued in their official and individual capacities, are Robert A. Gunnell (Gunnell), warden of the Federal Correctional Institution at Danbury, Connecticut (Danbury), and J. Michael Quinlan (Quinlan), warden of the Federal Correctional Institution at Otisville, New York (Otisville). This court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 (Supp. V 1981).[1]

The case is now before the court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion is granted.

### Facts[2]

In July of 1982, Persico was incarcerated at Danbury. On or about July 29, 1982, certain prisoners at Danbury staged a work strike. Persico did not participate in the work strike, and so informed the prison officials upon interrogation. Persico was advised by Danbury personnel that he would not be punished or transferred, since he had not been involved in the work strike, and indeed, had volunteered to take on extra work.

In the early morning hours of July 31, 1982, however, Persico was, without prior notice or hearing, removed from Danbury and transferred to the Federal Correctional Institution at Lewisburg, Pennsylvania (Lewisburg). He was subsequently transferred from Lewisburg to Michigan, and then to the Federal Correctional Institution at Lompoc, California (Lompoc). Persico was later returned to the East Coast, and was incarcerated at Otisville.[3]

In his original complaint, Persico alleged that defendants had violated his rights under the Fifth, Eighth, and Ninth Amendments "by subjecting him to arbitrary and unwarranted transfers to other federal correctional institutions without prior notice and without any opportunity to be heard."[4] Defendant Gunnell was alleged to have "initiated, recommended or approved" Persico's transfer from Danbury and all subsequent transfers, "in utter disregard of plaintiff's safety and welfare, and in complete disregard of the needs of plaintiff's wife and children."[5] Persico asserted that he was still subject to "imminent transfer" by defendant Quinlan.[6] The past transfers and threat of future transfers were said to have caused Persico "anxiety" and "uncertainty," and to have interfered with "a stable adjustment to institutional life," as well as to have been a source of "great anguish for plaintiff's wife and children."[7]

Persico sought "compensatory and exemplory [sic] monetary damages" against Gunnell in the combined amount of $50,000, as well as injunctive relief against Quinlan prohibiting further transfers except at the direction of the court, and a hearing with respect to Persico's claims.[8]

### Procedural History

The case came before the court on December 22, 1982 on order to show cause. Persico sought an order temporarily restraining Quinlan from transferring plaintiff from Otisville. In addition to the alle-

---

1. Persico also asserts that this court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1343 and 1361.

 Since no allegations are made of a conspiracy prohibited by 42 U.S.C. § 1985, nor of a deprivation of rights under color of State law, and no right to relief pursuant to a federal statute is asserted, jurisdiction is not properly founded on 28 U.S.C. § 1343.

 Neither is jurisdiction properly predicated on 28 U.S.C. § 1361, since no relief in the nature of mandamus is sought.

2. As is proper in considering a motion under Fed.R.Civ.P. 12(b)(6), all of Persico's factual allegations are taken as true.

3. After the instant action was commenced, Persico was removed from Otisville. He is currently incarcerated at Lompoc. *See* notes 15 and 16, *infra*, and accompanying text.

4. Complaint at ¶ 1.

5. *Id.* at ¶ 15.

6. *Id.* at ¶ 18.

7. *Id.*

8. *Id.* at p. 6.

gations of the complaint, Persico alleged that one of his sons was under psychiatric treatment which required that Persico remain close to his home in New York City.[9] The court denied Persico's application, and scheduled a hearing on the motion for a preliminary injunction for January 17, 1983.

On January 4, 1983, Persico filed an amended complaint. The factual allegations of the amended complaint are substantially similar to those outlined above, with the following exceptions. Persico now alleges that defendants' actions are a "continuing, deliberate course of arbitrary, unwarranted and punitive transfers";[10] defendants' actions are alleged to have been taken "deliberately and in bad faith,"[11] in disregard of the needs of Persico and his mother in addition to those of Persico's wife and children;[12] and defendants' actions are alleged to "constitute continued, ongoing selective persecution."[13] Damages are now sought against both defendants, jointly and severally, in a total amount of $50,000.[14]

The instant motion to dismiss the complaint was filed on January 11, 1983. By consent of the parties, the hearing on Persico's application for a preliminary injunction was postponed until after a decision has been rendered on defendants' motion to dismiss.

On January 20, 1983, an oral application was made to the court for an order temporarily restraining a scheduled transfer of Persico to Lewisburg, and thence to Lompoc. After argument, the court found that no showing had been made of irreparable harm, and declined to issue the requested order.[15]

The court has been informed that the transfer to Lompoc was accomplished, and that Persico is currently incarcerated at that facility.

### Discussion

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### I. *Fifth Amendment Claims:*

 When presented with a challenge under the Due Process Clause to governmental action, the court must look to the nature of the claimed interest, rather than its weight. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, reh'g denied, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976) (citation omitted).

 It is well settled that a convicted prisoner has no right to be incarcerated in a particular institution, and that the Due Process Clause, absent some right created by statute, regulation or policy, affords no protections against inter-prison transfers.

In *Meachum,* an action brought by state prisoners pursuant to 42 U.S.C. § 1983 challenging their transfers to a less favorable

---

9. Affidavit of Bruce Cutler, dated December 22, 1982, at ¶ 6.

10. Amended complaint at ¶ 1. *See also id.* at ¶ 15.

11. *Id.* at ¶ 15.

12. *Id.*

13. *Id.* at ¶ 16.

14. *Id.* at p. 7.

15. *See* Order dated January 20, 1983.
 Upon Persico's arrival at Lewisburg, he brought a separate action in the United States District Court for the Middle District of Pennsylvania, again challenging the series of transfers as an improperly motivated course of action in violation of Persico's rights under the Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution. On January 26, 1983, Persico applied to Judge Muir of that court for an order temporarily restraining the scheduled transfer to Lompoc. After a hearing at which testimony was taken, Judge Muir denied the application. By opinion dated January 31, 1983, Judge Muir explained that Persico had failed to show a reasonable probability of success on the merits and had failed to show irreparable harm. Judge Muir further found that there was potential harm to defendants in that action in delaying the transfer to Lompoc. *See Persico v. Carlson,* Civil No. 83–0110 (M.D.Pa. January 31, 1983).

institution within the state without an adequate factfinding hearing, the Court "reject[ed] at the outset the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." 427 U.S. at 224, 96 S.Ct. at 2538 (emphasis in original).

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.... The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Id.* (emphasis in original). The Court continued:

> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

*Id.* at 225, 96 S.Ct. at 2538. Furthermore, the Court found that Massachusetts law did not grant a prisoner the right to remain in a particular prison "defeasible only upon proof of specific acts of misconduct." *Id.* at 226, 96 S.Ct. at 2539. Since prison officials had discretion under Massachusetts law to transfer a prisoner whether or not misconduct on his part was proved, the Court held that the prisoner's interest in remaining in a particular institution was "too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Id.* at 228, 96 S.Ct. at 2540. *See also Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (no right under New York law to remain at a particular prison absent misconduct).

The application of the analysis employed by the Court in *Meachum* and *Montanye* is not limited to challenges of intrastate transfers of state prisoners.[16] The court must therefore look to federal statutory law to ascertain whether federal law grants Persico a justifiable and therefore protected expectation that he will not be transferred absent proven misconduct on his part. Transfers of federal prisoners are governed by 18 U.S.C. § 4082(b), which provides that

> [t]he Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, *and may at any time transfer a person from one place of confinement to another.*

(1976) (emphasis added).[17] This statute has been held to grant extremely broad discretion to federal prison authorities to transfer prisoners among institutions. *See, e.g., Smith v. Saxbe,* 562 F.2d 729, 735 (D.C.Cir. 1977); *Beck v. Wilkes,* 589 F.2d 901, 904 (5th Cir.), *cert. denied sub nom. Beck v.*

---

**16.** ˋIt has been held applicable to out-of-state transfers of state prisoners (*see, e.g., Cofone v. Manson,* 594 F.2d 934 (2d Cir.1979)); to transfers of state prisoners to federal institutions pursuant to 18 U.S.C. § 5003 (*see, e.g., Kivela v. United States Attorney General,* 523 F.Supp. 1321 (S.D.N.Y.1981), *aff'd,* 688 F.2d 815 (2d Cir.1982); *Sisbarro v. Warden, Massachusetts State Penitentiary,* 592 F.2d 1 (1st Cir.), *cert. denied,* .444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); and *Beshaw v. Fenton,* 635 F.2d 239 (3d Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981)); to transfers of territorial prisoners to the mainland (*see,*

*e.g., Ali v. Gibson,* 631 F.2d 1126 (3d Cir.1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981)); and, as here, to transfers of federal prisoners among federal institutions (*see, e.g., United States v. Mayo,* 646 F.2d 369 (9th Cir.), *cert. denied sub nom. Dondich v. United States,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); and *Beck v. Wilkes,* 589 F.2d 901 (5th Cir.), *cert. denied,* 444 U.S. 845, 100 S.Ct. 90, 62 L.Ed.2d 58 (1979)).

**17.** The powers granted by this statute have been delegated to the Federal Bureau of Prisons. *See* 28 C.F.R. §§ 0.96(c) and 0.97 (1982).

*Hanberry,* 444 U.S. 845, 100 S.Ct. 90, 62 L.Ed.2d 58 (1979); and *Floyd v. Henderson,* 456 F.2d 1117, App. at 1119 (5th Cir.1972). 18 U.S.C. § 4082(b) empowers the Attorney General to transfer a prisoner for whatever reason or for no reason at all. *Cf. Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540.

It would therefore seem clear that neither the Constitution nor the applicable federal statute grants Persico a liberty interest in the location of his place of confinement sufficient to invoke the protections of the Due Process Clause.

Persico asserts, however, that "a due process claim predicated upon allegations that a transfer was punitive may state a valid claim." [18] The Supreme Court, however, has explicitly rejected any distinction for the purposes of the Due Process Clause between "punitive" transfers and other types of transfers. "The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Montanye,* 427 U.S. at 242, 96 S.Ct. at 2547.

In *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.1980), *cert. denied sub nom. Boles v. Chavis,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), the Seventh Circuit stated that "if [plaintiff] can establish that his transfer was disciplinary, he has stated a valid claim." *Id.* at 1290 (citation omitted). More recently, however, the Seventh Circuit recognized that the above-cited statement in *Chavis* "is plainly irreconcilable with *Montanye* and must of course be disregarded." *Shango v. Jurich,* 681 F.2d 1091, 1099 n. 14 (7th Cir.1982).

■ The court therefore holds that allegations that transfers were "punitive" are insufficient to invoke the protections of the Due Process Clause, and therefore fail to state a claim upon which relief can be granted.

Persico claims that the "needs" of his family have been disregarded and, *a fortiori,* that his constitutional rights have been violated, by the interprison transfers that have taken him far from his home in New York City.

"However, there is no constitutional right in favor of a prisoner to have his place of confinement close by or proximate to the location of his friends or relatives or to have any particular place designated for his confinement." *Kivela v. United States Attorney General,* 523 F.Supp. 1321, 1325 (S.D. N.Y.1981), *aff'd,* 688 F.2d 815 (2d Cir. 1982).[19]

■ A valid conviction and commitment to the custody of the Attorney General constitutionally deprives a convict of his liberty to the extent that he may be incarcerated in *any* of the facilities authorized for the confinement of federal prisoners by 18 U.S.C. § 4082. *Cf. Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538.

■ Persico also argues that the Court's holdings in *Meachum* and *Montanye,* since they addressed only situations in which violations of due process on the basis of *single* transfers were claimed, do not preclude a valid claim that *multiple* transfers may trigger the due process protections of the Fifth Amendment. The court rejects this argument. As long as the conditions of confinement "do not otherwise violate the Constitution," *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538, the Due Process Clause places no limitations upon the Attorney General's statutory right to transfer a federal prisoner "at any time." 18 U.S.C. § 4082(b) (Supp. V 1981). *See Beshaw v. Fenton,* 635 F.2d 239 (3d Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981).

In his memorandum of law, Persico asserts that "as a result of his most recent transfer from Otisville, plaintiff lost his opportunity to participate in a pre-release

**18.** Plaintiff's Memorandum of Law at p. 5.

**19.** *See also Beshaw v. Fenton,* 635 F.2d 239, 246 (3d Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981) ("[W]e are aware of no authority suggesting that a

transfer to a facility not easily accessible to a prisoner's relatives ... necessarily implicates liberty interests protected by the Due Process Clause.").

**1134**

program with its many attendant benefits," [20] citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Court held that a Nebraska statute had established a right in prisoners to good time credits, and that, under that statute, "serious misconduct" was the only permissible basis for revocation of the good time credits. *Id.* at 557–58, 94 S.Ct. at 2975–2976. The Court held that, "the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.* at 557, 94 S.Ct. at 2975.

■ Persico has not, however, indicated that he has any statutory right to participation in a pre-release program, nor does he claim that participation in such a program can be denied him only upon a finding of misconduct. Rather, Persico appears here to claim that he has some liberty interest rooted in the Constitution to favorable conditions of confinement. However, as the court has already noted, the mere fact of loss of benefits upon a transfer, however "grievous," is insufficient to trigger procedural due process protections. *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538.

> Even if it could be contended that the conditions in the transferee institution were less favorable, ... it would not give rise to a constitutional claim of denial of equal protection of the laws or denial of due process. A prisoner sentenced to imprisonment under a valid judgment of conviction is not entitled to ... protect himself against transfer from one institution to another where the conditions of confinement may be more onerous as long as the conditions of confinement do not otherwise violate his constitutional rights.

*Kivela v. United States Attorney General,* 523 F.Supp. 1321, 1324–25 (S.D.N.Y.1981), *aff'd,* 688 F.2d 815 (2d Cir.1982) (footnote omitted). Furthermore, aside from his unelaborated citation to *Wolff v. McDonnell,* Persico has "identifie[d] no provision of ... federal law that confers on him an 'entitlement' to remain in conditions of confinement substantially similar to those to which he was subject [in Otisville]." *Beshaw v. Fenton,* 635 F.2d 239, 246 (3d Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981). Persico has, therefore, failed to state a constitutionally cognizable claim with respect to his alleged loss of pre-release benefits.

■ Nor does Persico's dramatic claim that "he has been, and continues to be, subjected to ... *selective* persecution" state a "telling" claim "when measured against equal protection standards." [21] Even if, as Persico alleges, inmates of similar security and custody classifications have not been subjected to similar patterns of transfers, Persico has failed to state a claim actionable under the Fifth Amendment. Neither the Amendment nor 18 U.S.C. § 4082(b) requires that prison officials consider only an inmate's security or custody classification in making discretionary transfer decisions, and there is no requirement that prisoners be transferred only in groups. 18 U.S.C. § 4082(b) empowers the Attorney General to "transfer a person," and this may be done "at any time." (emphasis added).

Furthermore, it is not to be assumed that "transfers are mindless events." *Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540. They are often based upon informed predictions pertaining to institutional security or prisoner welfare.

> Such a predictive 'decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." ' *Greenholtz v. Inmates of Nebraska Penal*

---

**20.** Plaintiff's Memorandum of Law at p. 6 (footnote omitted).

**21.** *Id.* at p. 8.

*and Correctional Complex,* [442 U.S. 1, 10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979)] (citation omitted). Such discretionary decisions are the business of penologists and 'are not the business of federal judges.' *Meachum,* [427 U.S. at 229, 96 S.Ct. at 2540].

*Shango v. Jurich,* 681 F.2d 1091, 1102 (7th Cir.1982).

Finally, Persico claims that, since his transfer was actually a "disciplinary" one, he had a protected liberty interest in the procedural requirements set forth in Bureau of Prisons Program Statement No. 5270.5 (August 12, 1982) (Program Statement). While this court recognizes that a protected liberty interest may be created by an official prison policy, as well as by a statute or regulation (*see, e.g., Shango v. Jurich,* 681 F.2d at 1099), the court holds that there is none here.

As the court has previously noted, wide discretion in the transfer of duly convicted federal prisoners among institutions is granted to the Attorney General by 18 U.S.C. § 4082(b). The Program Statement relied upon by Persico amends, *inter alia,* the Bureau of Prisons regulations set forth at 28 C.F.R. § 541.10, *et seq.,* which govern federal prison disciplinary procedures. *See* Program Statement at Chapter 1, p. 1, *et seq.* "Prohibited acts" are divided into four categories of severity—"Greatest," "High," "Moderate," and "Low Moderate." The prohibited acts and the sanctions authorized to be imposed in each category are identified in Table 3, which is found in the Program Statement at Chapter 4, pp. 3–10. Authorized sanctions may be imposed by the Institution Disciplinary Committee or, in certain cases, a Unit Disciplinary Committee, provided that "the inmate first is found to have committed a prohibited act." *Id.* at Chapter 4, p. 1. Procedures for the investigation of disciplinary infractions, for hearings, and for the imposition of sanctions are set forth at *id.,* Chapters 5–8. The various authorized sanctions are identified alphabetically. The imposition of sanction "C.," "Disciplinary Transfer," is authorized upon findings of commission of prohibited acts of the "Greatest," "High," and "Moderate" categories. *Id.* at Table 3.

Persico argues that since his transfers were for disciplinary reasons, he had an interest protected by the Due Process Clause in compliance by defendants with the Program Statement's procedural requirements, which include notice and hearings, before such disciplinary transfers were ordered. There is no constitutional right, however, not to be transferred. 18 U.S.C. § 4082(b) would authorize a discretionary transfer of .Persico whether or not it had been proven that he had committed a disciplinary infraction. Whatever right Persico may have thought he had in remaining at a particular prison as long as he did not commit a disciplinary infraction, it was not one defeasible only upon proof of the commission of a prohibited act.

In *Meachum,* respondents had been ordered transferred following a series of fires at the transferor institution. Hearings had been held prior to the transfers. Respondents argued that the pre-transfer hearings at the prison had not been constitutionally adequate. 427 U.S. at 216–18, 222, 96 S.Ct. at 2534–2535, 2537. The Court observed that

[a] prisoner's behavior may precipitate a transfer; and absent such behavior, perhaps transfer would not take place at all. *But ... Massachusetts prison officials have the discretion to transfer prisoners for any number of reasons.... [N]o legal interest or right of these respondents under Massachusetts law would have been violated by their transfer whether or not their misconduct had been proved ....*

*Id.* at 228, 96 S.Ct. at 2540 (emphasis added). The Court continued:

Whatever expectation that the prisoner may have in remaining at a particular prison so long as he behaves himself, *it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.*

*Id.* (emphasis added).

█ Thus, when prison officials have been granted the power to deprive a prison-

er under *any* circumstances of a benefit whose deprivation may also be ordered as a disciplinary measure, "too ephemeral" an interest is created in the prisoner in that benefit to trigger the procedural protections of the Due Process Clause when it is withdrawn for disciplinary reasons.[22] This point was made even more explicitly by the Seventh Circuit in *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982), in which the court held that Illinois prison transfer regulations, while "contemplat[ing] different procedures with respect to different types of transfers, [did] not limit the transfer decision to any particular reason." *Id.* at 1100 n. 15. The court stated that

22. The Seventh Circuit noted in *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir.1982) that

[i]n *Meachum*, the court of appeals interpreted applicable regulations as entitling inmates to a hearing, *see Fano v. Meachum*, 520 F.2d 374, 379–80 (1st Cir.1975), *rev'd*, [427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)], but that 'did not deter the Supreme Court from concluding that, on the record before it, state law created no liberty interest.' *Lombardo v. Meachum*, 548 F.2d 13, 15 (1st Cir. 1977).

The cases cited by Persico in support of his assertion of a liberty interest in the protections of the Program Statement are distinguishable on their facts, and are therefore unpersuasive.

In *Hewitt v. Helms*, ——— U.S. ———, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court held that a Pennsylvania prison regulation governing the use of administrative segregation created a liberty interest. The Court found, however, that Pennsylvania had "gone beyond simple procedural guidelines." *Id.* at ———, 103 S.Ct. at 871. It has used language of an unmistakably mandatory character, *requiring* that certain procedures 'shall,' 'will,' or 'must' be employed ... *and that administrative segregation will not occur absent specified substantive predicates—viz.,* 'the need for control,' or 'the threat of a serious disturbance.' *Id.* (emphasis added).

In contrast, the Program Statement relied upon by Persico does not provide that transfers will occur only in disciplinary situations. Rather, it provides that, *if* a transfer is to be ordered as a *disciplinary* measure, certain procedures are to be followed. The Program Statement does not alter the fact that, under 18 U.S.C. § 4082(b), a prisoner may be transferred "at any time." Thus, the case at hand falls squarely within the holdings of *Meachum*, 427 U.S. at 228, 96 S.Ct. at 2540, and *Shango*, 681 F.2d at 1100–1102.

[t]he argument that the procedures established by the regulations can themselves be considered a liberty interest is analytically indefensible.

*Id.* at 1100.

A liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality. In order to establish such an interest, a 'plaintiff must show a substantive restriction on the [official's] discretion ....' *Suckle v. Madison General Hospital*, [499 F.2d 1364, 1366 (7th Cir.1974)]. *Even if Illinois regulations provide a right to a hearing prior to ·interprison*

In *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir.1980) (*en banc*), *cert. denied sub nom. Anderson v. Winsett*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), the court found that regulations implementing a state work release statute created a liberty interest protected by the Fifth Amendment. There, however, the regulations established eligibility requirements which, if met by a prisoner, "[gave] rise to a liberty interest in work release." *Id.* at 1007. The court further found that the regulations limited the discretion of prison authorities in determining whether to grant or deny work release. Under the regulations, plaintiff in that case would have been granted work release had the prison officials acted within the permissible scope of their discretion. *Id.* The court distinguished the limited discretion granted to prison officials by the regulations from the "absolute" discretion found by the Court in *Meachum*. *Id.*

Similarly, in *Wright v. Enomoto*, 462 F.Supp. 397 (N.D.Cal.1976), *aff'd*, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), the court found that California prison regulations granted a prisoner a right not to be placed in maximum security confinement conditions "unless he is found, for clearly documented reasons, to come within the standard set by the rules." *Id.* at 403.

Finally, *Wakinekona v. Olim*, 664 F.2d 708 (9th Cir.1981), *cert. granted*, 456 U.S. 1005, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982), involved state prison transfer regulations that "clearly condition[ed] prison transfers involving a 'grievous loss' upon a hearing by an impartial committee established by the prison administrator." *Id.* at 710. The regulations were held to "create a justifiable expectation that a prison transfer involving a 'grievous loss' will not be carried out unless certain procedures are followed." *Id.* at 711.

*transfers, that procedural right is not accorded federal due process protection.* *Id.* at 1100–1101 (emphasis added).

Constitutionalizing every state procedural right would stand any due process analysis on its head.... If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing a hearing. *Reductio ad absurdum.*

*Id.* The court concluded:

> If officials may transfer a prisoner to another prison irrespective of what the inmate may establish at an administrative hearing, the Fourteenth Amendment does not demand that the state engage in a ritualistic hearing.

*Id.* at 1101–02 (emphasis added).

█ The Program Statement at issue here, like that discussed in *Shango,* merely establishes procedural rights and creates no substantive rights in Persico. Persico's complaint cannot therefore be held to state a claim under the Fifth Amendment with respect to the failure of defendants to provide notice and hearings pursuant to the Program Statement, because the Program Statement creates no protected liberty interest.

## II. *Eighth Amendment Claims:*

Persico claims that "the repeated punitive transfers inflicted upon plaintiff in the manner that they were gave rise to a violation of constitutional magnitude under the Eighth Amendment."[23]

█ The court has already noted that there is no constitutional right under the Fifth Amendment to protection against multiple transfers. Nor can a claim of constitutional dimension be predicated upon allegations, even if proven, that a transfer or series of transfers was "punitive." The court finds that Persico's amended complaint fails to state a claim of cruel and unusual punishment in violation of the Eighth Amendment. *See Sisbarro v. Warden, Massachusetts State Penitentiary,* 592 F.2d 1, 4 (1st Cir.) ("While the appellant has been subjected to a considerable number of possibly burdensome uprootings during his prison term, such transfers are neither unusual nor 'cruel in the constitutional sense.'" (citation omitted)), *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979).

Persico also claims that the transfers "exposed [him] to impermissible additional punishment beyond the terms of his sentence and commitment," and that this additional punishment has been inflicted upon him "because the authorities ... have singled him out for who and what they have labeled him to be."[24]

█ First of all, transfers among federal institutions do not subject a convicted prisoner to "punishment beyond the terms of [the] sentence and commitment." *Cf. Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538 ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.").

Since Persico has failed to state a claim that additional punishment has been imposed on him, his claim that this "punishment" is visited upon him because of his "status" must necessarily fail. Persico cited *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) in support of this claim. That case, however, involved a California statute that made the status of narcotics addiction, which the Court found to be an illness, a criminal offense.[25] This is clearly not such a case. There is no "punishment" by virtue of the fact of transfers. In any event, Persico has not indicated "who and what [defendants] have labeled him to be." Idle speculation, particularly in the complete absence of a cognizable claim of punishment, is not the business of the federal courts.

---

23. Plaintiff's Memorandum of Law at p. 9.

24. *Id.* at pp. 10, 9.

25. 370 U.S. at 666–67, 82 S.Ct. at 1420–1421.

**1138**

III. *Ninth Amendment Claim:*

██ Other than his general assertion in the amended complaint that he has been denied "other rights guaranteed by the . . . Ninth Amendmen[t]," [26] Persico has identified no right guaranteed to him by the Ninth Amendment that defendants have allegedly violated. Persico failed entirely to address this issue in his memorandum of law submitted in opposition to the motion to dismiss. Since Persico failed to identify a right guaranteed to him by the Ninth Amendment, and has alleged no specific instances in which such right was violated, the court holds that the amended complaint fails to state a claim under the Ninth Amendment upon which relief can be granted.

IV. *Damages Claim:*

The court has found that Persico's amended complaint fails to state valid claims under the Fifth, Eighth, and Ninth Amendments upon which relief can be granted. Defendants' alleged actions, even if proven, deprived Persico of no rights, and thus are not legal wrongs compensable in damages. *A fortiori,* his claims for damages against defendants must also be dismissed.

### Conclusion

Persico's amended complaint fails to state claims under the Fifth, Eighth, and Ninth Amendments to the Constitution upon which relief may be granted. To hold that Persico has stated a valid claim for relief "would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538.

The complaint will be dismissed in its entirety, with prejudice.

---

**26.** Amended complaint at ¶ 19.