Osvaldo **FERMIN–RODRIGUEZ**, a/k/a Oswald **Fermin**, Plaintiff,

v.

**WESTCHESTER COUNTY JAIL MEDICAL PERSONNEL (on duty 6/13/97 to 1/22/99, during 7–3 pm), United States Attorney Mary Jo White, Assistant United States Attorney David Greenwald, United States Marshals for the Southern District of New York, in their individual and official capacities, Defendants.**

No. 00 CIV 1855 WCC.

United States District Court, S.D. New York.

Feb. 20, 2002.

As Amended Nunc Pro Tunc March 25, 2002.

Osvaldo Fermin–Rodriguez, Beacon, NY, Plaintiff Pro Se.

James B. Comey, United States Attorney for the Southern District of New York (Emily S. Reisbaum, Asst. United States Attorney, Of Counsel), New York City, for Defendants United States Attorney Mary Jo White, Assistant United States Attorney David Greenwald and United States Marshals for the Southern District of New York, U.S. Department of Justice.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

*Pro se* plaintiff Osvaldo Fermin–Rodriquez, a/k/a Oswald Fermin, brings the instant action under 42 U.S.C. § 1983 [1] against defendant Westchester County Jail Medical Personnel ("WCJ Medical"), and defendants United States Attorney Mary Jo White, Assistant United States Attorney David Greenwald, and United States Marshals Service for the Southern District of New York ("USMS") (collectively the "federal defendants"). Plaintiff alleges: (1) deliberate indifference to medical care and inadequate visitation privileges in violation of the Eighth Amendment against WCJ Medical; and (2) denial of due process under the Fifth Amendment against the federal defendants for failing to transfer plaintiff from a county jail, where he was held as a federal detainee, to state custody after a federal indictment against him was dismissed. The federal defendants now move to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth below, the federal defendants' motion is granted.

## BACKGROUND

The following discussion of the facts is based on the allegations in plaintiff's Amended Complaint as well as undisputed background information provided by both parties.[2] On November 1, 1995, plaintiff was convicted of assault in the first degree and witness intimidation in the third degree, and was sentenced to a term of imprisonment between nine and one half and nineteen years. (Reisbaum Decl. ¶ 2.) Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven"), a facility operated by the New York State Department of Corrections ("State DOC"). (*Id.* at ¶ 2; Am. Complt. ¶ 8.) On April 21, 1997, while plaintiff was incarcerated at Green Haven, the United States filed a federal indictment, *see United States v. Fermin*, No. 97 Cr. 386, charging plaintiff

---

**1.** The Court understands that plaintiff is asserting his claim against the federal defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the well pleaded facts and consider those

facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.*, 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

with illegal re-entry into the United States following a 1992 deportation. (Reisbaum Decl. ¶ 3; Am. Complt. ¶ 9.) Pursuant to a writ of habeas corpus ad prosequendum, plaintiff was transferred to federal custody for presentment on the federal charges. (Pl.Mem.Opp.Mot.Dismiss, Ex. B.) Because of overcrowding at federal detention centers, plaintiff was transferred from Green Haven to Westchester County Jail ("WCJ") where he was held as a federal detainee. (Am.Complt.¶¶ 10–11.) On April 2, 1998, the federal indictment against plaintiff was dismissed, and the government did not appeal the decision within the allotted thirty-day time period. (*Id.* ¶¶ 27, 29.) However, plaintiff remained a federal detainee at WCJ and was not returned to the custody of the State DOC until January 22, 1999, eight and one half months after the government's time period for appeal had expired. (*Id.* ¶ 32.)

Plaintiff alleges that the he enjoyed better living conditions and quality of life as a state detainee at Green Haven than as a federal detainee at WCJ. For example, plaintiff claims that he suffers from severe back pain, a bad skin condition and a sleep disorder. (*Id.* ¶ 13.) As a federal detainee at WCJ, plaintiff claims that he sought medical attention for these ailments, but was dissatisfied with the treatment provided by WCJ Medical. (*Id.* ¶ 16.) In addition, plaintiff explains that while incarcerated at Green Haven, prison officials allowed him weekly visits from his wife and three children, conjugal visits with his wife every three to four months, and visits from his mother using her Public Assistance photo identification card. (*Id.* ¶¶ 20–22.) In contrast, WCJ only allowed two of plaintiff's children to visit at the same time, did not provide for conjugal visits with his wife and refused his mother visitation privileges because her Public Assistance photo identification card was insufficient. (*Id.* ¶¶ 23–25.)

According to plaintiff, his wife divorced him for abandonment and cruel and unusual punishment during the time he was held as a federal detainee at WCJ following the dismissal of his federal indictment. (*Id.* ¶ 33.) Plaintiff alleges that the divorce resulted from WCJ's denial of conjugal visits, and because his wife could not afford to hire a babysitter for one of their children while the other two children visited the prison. (*Id.*) Plaintiff also alleges that the divorce and inadequate visitation with his family caused extreme depression and a psychotic state of mind. (*Id.* ¶ 34.)

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; *Hertz Corp.*, 1 F.3d at 125. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). At the same time, *pro se* complaints "are held to 'less stringent standards than formal pleadings drafted by lawyers,' and are to be construed liberally on a motion to dismiss." *Van Ever v. New York State Dep't of Corr. Servs.*, No. 99 Civ. 12348, 2000 WL 1727713, at *2 (S.D.N.Y. Nov. 21, 2000) (citations omitted).

## II. *Fifth Amendment Claim* [3]

█ Plaintiff claims that the federal defendants violated his due process rights under the Fifth Amendment by failing to return him to the custody of the State DOC following the thirty-day period after his federal indictment was dismissed and not appealed. In support of his claim for denial of due process, plaintiff maintains that he was entitled to the improved quality of life and living conditions that existed at Green Haven as compared to WCJ.[4]

█ It is well settled that the transfer of a prisoner from one correctional facility to another does not automatically trigger the protection of the Fifth Amendment.

> [T]he Due Process Clause [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

*Meachum,* 427 U.S. at 224, 96 S.Ct. 2532; *see also Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989) ("Plaintiff[ ] did not have a blanket liberty interest in remaining at Green Haven, and, in the absence of a constitutionally impermissible motive, [ ] could have been transferred without a hearing for any reason."). The same applies to transfers between federal and state prisons and between different state prison systems. *See McCarthy v. Teta,* 101 F.3d 108, text in 1996 WL 115330, at *2 (2d Cir.1996) (stating that prisoners do not "have a liberty interest in a transfer to a federal prison or a different state prison system"); *Matter of Sindona,* 584 F.Supp. 1437, 1443–44 (E.D.N.Y.1984) (stating that the due process clause "in and of itself does not protect a duly convicted prisoner against transfer from one institution to another within either the state or the federal prison system"). Furthermore, the transfer to a prison with harsher conditions of confinement does not invoke the due process clause. *See Meachum,* 427 U.S. at 224–25, 96 S.Ct. 2532; *Kivela v. United States Attorney Gen.,* 523 F.Supp. 1321, 1324–25 (S.D.N.Y.1981). As the Supreme Court stated, the fact that "life in one prison is much more disagreeable than life in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum,* 427 U.S. at 225, 96 S.Ct. 2532.

**3.** Because only the federal defendants have moved for dismissal, plaintiff's claims against WCJ Medical are not presently at issue. Only the due process claim relating to the transfer from Green Haven to WCJ is relevant to the federal defendants. With respect to this claim, the federal defendants maintain that this Court does not have the authority to review the discretionary placement of a convicted prisoner. (Federal Defs. Mem. Supp. Mot. Dismiss at 5.) While it is true that prison officials generally have discretion to transfer an inmate from one correctional facility to another, *see Meachum v. Fano,* 427 U.S. 215, 228–29, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the transfer is reviewable if it is otherwise in violation of an individual's constitutional rights. For example, officials may not transfer an inmate in retaliation for exercising constitutionally protected rights, *see Hendricks v. Coughlin,* 114 F.3d 390, 393–94 (2d Cir.1997), and state statutes or regulations concerning prison transfers can also create protected liberty interests. *See Moorish Sci. Temple of Am., Inc. v. Smith,* 693 F.2d 987, 990 (2d Cir.1982); *Wright v. Ward,* 462 F.Supp. 344, 346 (S.D.N.Y.1978). Thus, this Court has the authority to review plaintiff's prison transfer to determine if it was in violation of constitutionally protected rights.

**4.** It should be noted that WCJ is a Westchester County facility where plaintiff was held as a federal detainee. The government has the authority to contract with state correctional facilities to house federal prisoners. 18 U.S.C. § 4002.

■ A statute, regulation or policy may create a protected liberty interest with respect to inter-prison transfers that invokes procedural due process. *See Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (citation omitted); *see also Moorish Sci. Temple of Am.,* 693 F.2d at 990. Transfers of federal prisoners are governed by 18 U.S.C. § 3621(b), which provides that:

[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted.... *The Bureau may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another.*

(Emphasis added.) This statute has been construed as granting broad discretion to federal prison authorities to transfer prisoners between different facilities. *See Howe v. Smith,* 452 U.S. 473, 482, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981) ("[B]y statute, federal prisoners may be transferred from one facility to another at the discretion of the Attorney General."); *see also Persico v. Gunnell,* 560 F.Supp. 1128, 1132–33 (S.D.N.Y.1983) (citing cases).⁵ Thus, "neither the Constitution nor the applicable federal statute grants [a prisoner] a liberty interest in the location of his place of confinement sufficient to invoke the protections of the Due Process Clause." *Id.* at 1133. Furthermore, un-

der New York law, "[t]he commissioner of corrections shall have the power to transfer inmates from one correctional facility to another." N.Y. CORRECT. § 23(1). New York law does not place any conditions on the discretionary power to transfer prisoners. *See Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988) ("New York Law does not place conditions on interprison transfers."); *Allen v. Coughlin,* No. 93 Civ. 5606, 1996 WL 164663 (S.D.N.Y. April 9, 1996). Plaintiff therefore had no liberty interest under state or federal law in returning to state prison. Plaintiff's contention that the federal defendants' action deprived him a liberty interest because the living conditions at Green Haven were superior to those at WCJ fails to state a cognizable constitutional injury. Plaintiff had no liberty interest in being returned from WCJ to Green Haven, regardless of the differences in quality of life.

■ In addition to arguing that his unduly prolonged confinement at WCJ violated his constitutional rights, plaintiff also contends that the federal defendants' failure to change his status from that of a federal detainee to a state detainee in and of itself implicated his right to due process. (Pl. Mem. Opp. Mot. Dismiss at 15.) According to plaintiff, the federal defendants had a duty to expeditiously restore plaintiff to state detainee status after the expiration of the appeal period on his dismissed federal indictment. (*Id.*) However, plaintiff does not cite, and this Court has not uncovered, any authority stating that prisoners have a liberty interest in the speedy return to classification as either a federal or state detainee once charges in one jurisdiction have been dismissed.⁶ In-

---

5. These cases involve 18 U.S.C. § 4082(b), the predecessor to 18 U.S.C. § 3621(b), which gave the Attorney General, rather than the Bureau of Prisons, authority to designate a prisoner's place of confinement. *See McCarthy v. Doe,* 146 F.3d 118, 123 n.2 (2d Cir. 1998). As explained by the legislative history of 18 U.S.C. § 3621(b), the provision is de-

rived from existing law, except that it places "custody of Federal prisoners directly in the Bureau of Prisons rather than in the Attorney General." § *See* S. Rep. No. 98–225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3324.

6. Plaintiff points to defendant Greenwald's declaration in support of the writ of habeas

deed, the time that plaintiff served as a federal detainee at WCJ was credited towards his state sentence.[7] (Federal Defs. Reply Mem. Supp. Mot. Dismiss at 2.) In a recent case in this district based on similar allegations, the court held that plaintiff's claim, that he was denied due process by defendants' delay in returning him from federal to state custody, failed to state a constitutional violation. *Cruz v. Menifee,* 2001 WL 55717, at *2 (S.D.N.Y. January 22, 2001) (dismissing inmate's claim that the delay in his return to a state facility deprived him of "valuable state programs for rehabilitation and early parole" and denied him due process). We conclude that plaintiff has not alleged the deprivation of a cognizable liberty interest by the federal defendants. Thus, the federal defendants' motion to dismiss is granted.

Because we hold that plaintiff has failed to state a claim that his constitutional rights were violated by the federal defendants, we need not consider the federal defendants' arguments with respect to qualified immunity, lack of personal involvement or failure to exhaust administrative remedies.

## CONCLUSION

For the reasons stated above, the federal defendants' motion is granted, and all

claims against the federal defendants only are dismissed with prejudice.

SO ORDERED.

---

corpus ad prosequendum to argue that the federal defendants understood their duty to return him to Green Haven following trial on the federal charges. (Pl. Mem. Opp. Mot. Dismiss at 22, Ex. B.) While it is true that the declaration states that plaintiff "will be returned to the Warden of Green Haven" after being presented on the federal charges, (*id.,* Ex. B, p. 2), this statement alone does not create a liberty interest for plaintiff in the prompt return to the status of a state detainee once the federal indictment was dismissed.

7. The Second Circuit has held that in cases where there is a delay in placing a prisoner in

proper custody, the prisoner is entitled to have his sentence run from the date custody should commence. *See Kiendra v. Hadden,* 763 F.2d 69, 72 (2d Cir.1985) (quoting *Smith v. Swope,* 91 F.2d 260, 262 (9th Cir.1937)) ("The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it ... if, without his fault, the marshal neglects to place him in the proper custody."). However, because plaintiff was serving his state sentence while detained at WCJ, this has no bearing on the instant action.