Solomon LATO, et al.

v.

**ATTORNEY GENERAL OF the UNITED STATES, et al.**

No. P–91–CA–002.

United States District Court, W.D. Texas, Pecos Division.

June 27, 1991.

---

Solomon G. Lato, Agbai Eke Abai, Edward Omoiunu, William Sonkwa, Ugulu Okafor, Matthew Analike, Hyginus Nwosa, pro se.

R. Barry Robinson, U.S. Attorney's Office, El Paso, Tex., Michael Jay Wolf, Nat. Treasury Employees Union, Mary K. Wolf, Aldean E. Kainz, Small, Craig & Werkenthin, Austin, Tex., for defendants.

## ORDER

BUNTON, Chief Judge.

BEFORE THIS COURT is Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. Plaintiffs did not file a response to Defendants' Motion. After careful consideration of the arguments contained in the Defendants' Memorandum in Support of their Motion, the Court is of the opinion Plaintiffs have failed to state a genuine dispute as to material facts, thus Defendant's Motion for Summary Judgment should be GRANTED.

On February 29, 1991, this Court granted the application of Plaintiff Solomon Lato to proceed *In Forma Pauperis* in the above-captioned cause. Plaintiffs contend the following: (1) The Bureau of prisons (BOP) transferred them to the Reeves County Center in violation of the United States Constitution because the BOP only transfers alien inmates to the facility and (2) they are being provided with inadequate educational opportunities, food, recreation, and personal safety at the Reeves County Center. Plaintiffs Move this Court for certification of their cause of action as a class action because other prisoners in their situation have allegedly received the same treatment. Apparently, Plaintiffs intend their action to be a *Bivens* type action against the federal defendants and a 42 U.S.C. § 1983 action against the non-federal employees. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Plaintiffs were designated to serve their sentences at the Reeves County Center, one of many contract confinement facilities utilized by the BOP. The Inter–Governmental Agreement between BOP and Reeves County dates to October 1988. Reeves County has a subcontract with the Corrections Corporation of America to operate the facility. The agreement is reviewed annually.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Furthermore, "[a]ll facts contained in the pleadings, dep-

ositions, admissions, and answers to interrogatories are reviewed by 'drawing all inferences most favorable to the party opposing the motion.'" *James v. Sadler,* 909 F.2d 834 (5th Cir.1990) (quoting *Reid v. State Farm Mutual Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)); *Moore v. Mississippi Valley State University,* 871 F.2d 545, 549 (5th Cir.1989); *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

Accordingly, the focus of this Court is upon disputes over material facts; that is, facts likely to affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). The Fifth Circuit stated, "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James,* 909 F.2d at 837; *see Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Boeing Co. v. Shipman,* 411 F.2d 365, 374–375 (5th Cir.1969) (en banc).

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby, Inc.,* the Court stated the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, Plaintiffs have the burden with respect to their claims and Defendants have the burden with respect to their defenses and claims for affirmative relief.

*Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and nonmoving party. "[T]he requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

In a second case, the Supreme Court reiterated the requirement that once the party moving for summary judgment has made a prima facie showing there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industr. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The third case in the trilogy, *Celotex Corp. v. Catrell,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), held when the moving party shows the opposing party is unable to produce the evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.,* it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the district court was satisfied of the absence of evidence to support it. The burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

## INMATE TRANSFERS

■ Plaintiffs make general allegations alleging BOP's practices and procedures of transferring alien inmates to contract facilities is unconstitutional because such transfers are made in the absence of notice and due process of law required by the Fifth and Fourteenth Amendments and are a clear violation of the Equal Protection

Clause. The BOP designates the place of a prisoner's imprisonment and may direct the transfer of a prisoner from one penal or correctional facility to another. 18 U.S.C. § 3621(b). Further, the BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP], whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the [BOP] determines to be appropriate and suitable...." *Id.*

■ "[A] federal court should not, under the guise of enforcing constitutional standards, assume the superintendence of jail administration." *Alberti v. Klevenhagen,* 790 F.2d 1220, 1223 (5th Cir.1986). When a prison regulation impinges on inmates' constitutional rights and does not involve the rights of those who are not inmates, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see Jackson v. Cain,* 864 F.2d 1235 (5th Cir.1989) (applying regulation standard to action). This Court "must accord wide ranging deference to the decisions of prison administrators and permit them to make difficult judgments concerning prison operations. (citations omitted). A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system." *Smith v. Bingham,* 914 F.2d 740, 742 (5th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1116, 113 L.Ed.2d 225 (1991).

In our view, such a standard is necessary if "prison administrators ..., and *not the courts,* [are] to make the difficult judgments concerning institutional operations." (citation omitted). Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Turner* 482 U.S. at 89, 107 S.Ct. at 2261 (emphasis added) (quoting *Jones v. North Carolina Prisoners' Labor Union Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) and *Procunier v. Martinez,* 416 U.S. 396, 407, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974)).

The Supreme Court in *Turner* gave several factors relevant to determining reasonableness of prison policy: (1) Whether the regulation has a logical connection to the legitimate government interests invoked to justify it. (2) Whether there are alternative means of exercising the rights that remain open to the inmates. (3) The impact that accommodation of the asserted constitutional rights will have on other inmates, guards, and prison resources. (4) The presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *see also Mumin v. Phelps,* 857 F.2d 1055, 1056 (5th Cir.1988) (prison officials' refusal to transport Islamic prisoners for weekly services was permissible limitation on prisoners' free exercise of their religion); *Kahey v. Jones,* 836 F.2d 948, 950 (5th Cir.1988) (prison was not required to prepare specially tailored nonpork menu in special way to accommodate plaintiff's Moslem religion).

Applying the *Turner* factors, the policy for transferring deportable aliens to Reeves County Center passes muster. First, there is a logical connection between the BOP regulation and the legitimate governmental interest justifying it. Community detention facilities, like the Reeves County Center, are typically utilized for specialized groups of inmates with similar characteristics and needs. The number of deportable aliens in custody is dramatically increasing. Some of the inmates are

housed in BOP facilities which are essentially dedicated to managing deportable aliens. Others, like the Plaintiffs, are housed in community correction facilities, which are also dedicated to managing deportable aliens.

Deportable aliens, as a group, do have common concerns, needs, and unique characteristics which warrant their placement in such institutions. For example, most of the inmates, like Plaintiffs, have relatively short sentences and are subject to deportation. Thus, as a group, they share common needs and concerns regarding deportation issues and have less need for extensive work and educational programs than inmates having longer sentences with needs to be assimilated back into the United States society after the completion of their sentences.

The placement of inmates in centralized locations allows institutional staff to develop knowledge and expertise in managing deportable inmates and addressing their deportation concerns. Additionally, such an arrangement allows the Immigration and Naturalization Service to more efficiently manage deportation processing.

Specialized groups such as aliens present security concerns, even though deportable aliens are classified as low security risks. Due to their alien status, deportable alien inmates are often the victims of harassment by citizen inmates confined at BOP facilities not utilized primarily for alien inmates. Moreover, deportable alien inmates present a greater risk of attempting escape than citizen inmates.

■ Because the alien inmates are not considered high security inmates in other areas, they cannot be designated to regular, high security institutions. Plaintiffs assert they were transferred from their respective prison designations, which have lower security ratings, to the Reeves County Center, which has a higher security rating. However, the Center is not designated with a security level rating. If the Center was rated, it would not meet the criteria for even a low security level BOP institution. Security and efficient management of resources are legitimate correc-

tional concerns which are reasonably related to the orderly running of a prison and are not violative of an inmate's constitutional rights.

Second, the BOP's policy is neutral. Plaintiffs are not being denied any rights so no alternative means is at issue. Plaintiffs are being treated differently because of their alien status, but as discussed, the policy has a logical connection to the legitimate government interests invoked to justify it. Plaintiffs have no right to be in any particular institution or to a specific hearing before being transferred. Such a requirement would have stifling effects on prison systems. Further, Plaintiffs have not presented any evidence they are being transferred in retaliation for exercising a constitutional right.

Third, the consideration of the impact of recognizing Plaintiffs' claim on the allocation of prison resources would be negative with respect to guards, inmates, and the allocation of prison resources. As previously discussed, the policy best serves the needs and safety of Plaintiffs and the resources of the BOP.

Fourth, the presence of alternatives must be considered. " '[P]rison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.' (citation omitted). Instead, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.' " *Mumin*, 857 F.2d at 1058 (quoting *Turner*). Plaintiffs make no such showing. There is an absence of obvious, easy alternatives to the BOP's policy and this Court is prohibited from assuming the role of superintendent of jail administration.

This Court accords wide ranging deference to the decisions of prison administrators and permits them to make difficult judgments concerning prison operations. Plaintiffs' asserted constitutional rights are inconsistent with the legitimate penological objectives of the correction system.

Applying the *Turner* factors, the BOP's regulation of the placement of deportable aliens in the Reeves County Center is reasonably related to legitimate penological interests and, consequently, the regulation is valid.

## UNFAVORABLE JAIL CONDITIONS

■ Regarding Plaintiffs' other complaints of unfavorable jail conditions, "[j]ail conditions must not fall below a minimum standard of decency required by the Eight Amendment. Conditions which 'alone or in combination, may deprive inmates of the minimal civilized measures of life's necessities ... could be cruel and unusual under the contemporary standard of decency....'" *Alberti v. Klevenhagen,* 790 F.2d 1220, 1223 (5th Cir.1986) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Subject to constitutional requirements, prison officials have the discretion to determine whether and when to provide prisoners with privileges which amount to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety.

## INMATE SAFETY

Plaintiffs contend their personal safety is in danger from assaults by Hispanic inmates who are also aliens confined to the Reeves County Center. Plaintiffs claim any weapons in the facility indicates inadequate security. "'A prisoner has a right to be protected form the constant threat of violence....'" *Alberti,* 790 F.2d at 1224 (quoting *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.1981) (en banc)). The relevant standard of a constant threat of violence in an institution where terror reigns is not satisfied here. Plaintiffs have not shown a pattern of violence in the Reeves County Center or inadequate supervision which creates a constant threat to the inmates' safety.

## NUTRITION

Regarding the allegations of inadequate nutrition, "[t]he [E]ight [A]mendment requires that jails provide inmates with 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell,* 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977)). Food menus at the Reeves County Center are established and approved by a certified dietician at least annually and inspections have revealed no significant findings of problems in the food service department. There is no evidence the inmates are not provided with nutritionally adequate food prepared and served under conditions which present no danger to their health.

## EDUCATION AND RECREATION

■ Regarding Plaintiffs' complaints of inadequate education and recreation programs, inmates do not have any protected liberty interests in specific educational programs and recreation opportunities or in avoidance of being transferred to facilities where the programs are less comprehensive. The United States Constitution does not mandate educational, rehabilitative, or vocational programs. *Beck v. Lynaugh,* 842 F.2d 759, 762 (5th Cir.1988) (citing *Newman v. State of Alabama,* 559 F.2d 283, 292 (5th Cir.1977), *rev'd in part on other grounds sub nom., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)).

The Reeves County Center offers Adult Basic Education and General Education Degree courses and Substance Abuse educational programs. Presently, vocational training is unavailable because the majority of inmates are serving twelve or fewer months. Further, the community does not have a local college, which would normally coordinate educational and vocational programs.

Further, the federal inmates at the Reeves County Center receive daily access to recreational facilities in accordance with the mandated Statement of Work. "'[T]he evidence in each case should support the existence of any health hazard under the specific circumstances involved.'" *Green v. Ferrell,* 801 F.2d 765, 772 (5th Cir.1986) (quoting *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.1982), *cert. denied,* 460 U.S.

1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983)). Clearly, there is no evidence the recreational and educational programs at the Center fall below the constitutional minimum.

## CONCLUSION

The housing of deportable aliens in contract detention facilities, such as the Reeves County Center, is directly related to the legitimate and reasonable penological concerns of security and safety of inmates, efficient management of this group, and efficient allocation of prison resources. The alternative of housing the deportable aliens in "regular" BOP institutions would negatively affect the orderly running and security of the institution and would impede efficient management of the aliens who have special concerns and needs regarding deportation issues.

The BOP set out legitimate and reasonable justifications for their administrative decision to house deportable aliens in contract detention facilities. Further, the Reeves County Center is in compliance with the BOP Statement of Work and is an approved contract confinement facility. Therefore, the housing of deportable aliens in contract detention facilities does not violate Plaintiffs' constitutional rights. Further, the conditions at the Reeves County Center do not even come close to rising to the level of being unconstitutional. Plaintiffs have failed to state a genuine dispute as to material facts, thus Defendant's Motion for Summary Judgment should be GRANTED. Accordingly,

IT IS ORDERED Defendants' Motion for Summary Judgment in the above-captioned cause is GRANTED.