Naomi **ARCHER**, et al., Plaintiffs,

v.

Janet **RENO**, et al., Defendants.

Civ. A. No. 94–119.

United States District Court, E.D. Kentucky, at Lexington.

Jan. 5, 1995.

374

Ana Balbuena, pro se.

Leonora Caminero, pro se.

Vickie Dellinger, pro se.

Martha Hernandez de Vasquez, pro se.

Daisy Diaz, pro se.

Sally Ann Fugett, pro se.

Dena Hannum, pro se.

Margaret McCoy, pro se.

Dorena Morales, pro se.

Lynne Rogers, pro se.

Gerrie Schwartzbach, pro se.

Susan Moore, pro se.

Naomi Archer, pro se.

Dell M. Littrell, U.S. Attorney's Office, Lexington, KY, for Albert J. Lane and Daniel Lawrence.

## MEMORANDUM OPINION

FORESTER, District Judge.

### I.  INTRODUCTION

This complaint stems from the decision of the Bureau of Prisons ("BOP") to convert the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"), which has been an all-female institution for the past several years, to an all-male institution effective in January 1995.  When this action was filed on April 7, 1994, the following thirteen (13) female inmates at FMC Lexington were named as Plaintiffs herein: Naomi Archer, Ana Balbuena, Leonora Caminero, Vicki Dellinger, Martha Hernandez de Vasquez, Daisy Diaz, Sally Ann Fugett, Dena Hannum, Margaret McCoy, Dorena Morales, Lynne Rogers, Gerrie Schwartzbach, and Susan Moore.

Plaintiffs filed this action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the following Defendants: Janet Reno, Attorney General of the United States; Kathleen Hawk, Director of the BOP; Margaret Hambrick, Warden at FMC Lexington; A. Darrell Valentine, D.D.S., Chief Dental Officer of the Mid–Atlantic Regional Dental Laboratory at FMC Lexington; Albert J. Lane, Director of the Mid–Atlantic Regional Dental Laboratory at FMC Lexington; and Daniel Lawrence, Assistant Director of the Mid–Atlantic Regional Dental Laboratory at FMC Lexington, alleging that the BOP's decision to convert FMC Lexington to an all-male institution and to transfer them to other correctional institutions prevented them from completing an educational course to become certified dental technicians, in violation of their equal protection rights and Title IX of the Education Amendments of 1972 of Title 20 U.S.C. §§ 1681–1688.

Plaintiffs state that the BOP operates five dental laboratories nationwide, that four of these five dental laboratories are operated at all-male institutions, and that FMC Lexington is the only correctional institution in the nation that currently affords female inmates the opportunity to work in a dental lab and to participate in a dental education course. Plaintiffs contend that with the conversion of FMC Lexington to an all-male institution, their forthcoming transfer to other institutions will violate their constitutional rights since they will then be denied the opportunity to complete this educational course in the dental lab at FMC Lexington and become certified dental technicians.

By Order of July 18, 1994, Magistrate Judge Wehrman denied Plaintiffs' motion for a protective order to prevent the BOP from transferring them to other correctional institutions until either this lawsuit was resolved or until they had completed the dental education course and had become certified dental technicians. Also on July 18, 1994, the magistrate judge denied Plaintiffs' motion for an emergency hearing on their motion for a temporary restraining order ("TRO"), and denied Plaintiffs' motion for appointment of counsel. [DE # 31]. Also, on July 18, 1994, Magistrate Judge Wehrman entered a Report and Recommendation concerning Plaintiffs' motion for a TRO wherein he recommended that Plaintiffs' motion for a TRO be denied. [DE # 29]. Subsequently, over Plaintiffs' objections, the Court adopted Magistrate Judge Wehrman's Report and Recommendation and denied Plaintiffs' motions for a TRO. [DE # 39].

This matter is before the Court on the Defendants' motion to dismiss, or in the alternative, for summary judgment. Plaintiffs having responded to this motion, it is ripe for review. The Defendants have submitted affidavits in support of their motion to dismiss or for summary judgment, and the Court has considered these matters outside the pleadings (the affidavits) in reviewing this matter; therefore, the Defendants' motion must be analyzed as a motion for summary judgment.

## II. THE MOTION FOR SUMMARY JUDGMENT

### A. *Standard for Summary Judgment*

Fed.R.Civ.P. 56 directs the disposition of a motion for summary judgment. Rule 56(c) states in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

■ The court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device,* 527 F.2d 1008 (6th Cir.1976); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir.1983). In short, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is required to consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989).

With this standard in mind, the court will proceed to consider the Defendants' motion for summary judgment.

### Discussion

The Defendants contend that for numerous reasons, this action should be dismissed. Defendants generally argue that Plaintiffs have failed to state a claim for which the relief they seek can be granted, that Plaintiffs have failed to state a *Bivens* claim, that Plaintiffs have failed to exhaust their administrative remedies prior to filing this action, and that the court lacks subject matter jurisdiction due to mootness or lack of standing.

## Factual Background

### A. The decision to make FMC Lexington an all-male facility

In July 1993, the BOP Executive Staff, which consists of the Director of the BOP, the Assistant Directors of the BOP, and the Regional Directors of the BOP, made the decision to convert FMC Lexington from an all-female institution to an all-male institution. (*See* Executive Staff Memorandum attached to *Declaration of Alberto Munguia,* Defendants' Exhibit 4 to *Defendants' Memorandum of Law in Support of Motion to Dismiss*—Docket Entry # 21). This decision was made due to the combination of two factors: (1) the Federal Medical Center at Carville, Louisiana, an all-male institution, was being closed, requiring the relocation of those inmates, and (2) the U.S. Department of Defense donated land at Carswell Air Force Base, Texas to the BOP, and several buildings, including a hospital, are located on this property. (*Declaration of Albert Lane,* Exhibit 1 to *Defendants' Memorandum of Law in Support of Motion to Dismiss*—Docket Entry # 21). The BOP also decided to make Carswell a female institution. As the result of these decisions, (1) many of the male inmates at FMC Carville will be transferred to FMC Lexington, and (2) the female inmates presently housed at FMC Lexington will be transferred to other institutions, including the medical center at Carswell. In making this decision, the BOP considered the inmates' security levels and the cost containment of male inmates. Factors the BOP considered in making the decision to transfer the female inmates at FMC Lexington to other institutions were demographic distribution and access to services, programs, and family contact. (*See* Exhibits 1 and 4 to *Defendants' Memorandum of Law in Support of Motion to Dismiss*—Docket Entry # 21).

### B. The Dental Laboratory at FMC Lexington

The Dental Laboratory has operated at FMC Lexington since 1976 and is one of five regional dental labs operated by the BOP. The other four dental labs are located at Federal Correction Institution ("FCI") El Reno, California; FCI Oxford, Wisconsin; United States Penitentiary ("USP") Lompoc, California; and USP Lewisburg, Pennsylvania. The dental lab at FMC Lexington provides dental prosthetic devices to twenty-two (22) federal facilities. The primary purpose of the dental laboratory is to produce dental prosthetic appliances that are needed by these federal facilities. A secondary purpose of the dental lab is to provide inmates with a job and to instruct them on the production of dental prosthetic appliances. (*Declaration of Albert Lane,* Exhibit 1 to *Defendants' Memorandum of Law in Support of Motion to Dismiss*—Docket Entry # 21).

Inmates volunteer to work in the dental lab. In order to be eligible to work in the dental lab, the inmate must meet the following requirements:

1. have a high school diploma or the equivalent;

2. have more than two years to serve;

3. cannot be a violent offender;

4. be medically fit;

5. be proficient in the English language;

6. not be enrolled in any other classes; and,

7. have tested negative for Hepatitis or have received the Hepatitis vaccine.

Once hired by the dental lab, inmates may at their election take courses offered in the dental lab to improve their knowledge of the dental lab and the field of dentistry in general. Additionally, inmates who work in the dental lab may view audio visual tapes to help teach them how to construct dental prosthetic appliances, such as partial plates, bridges, and false teeth. *Id.*

Inmates who have been hired by the dental lab also have the opportunity to apply for a national apprenticeship program, an "on-the-job training program." However, the inmates in the national apprenticeship program receive the same salary as the other inmates working in the dental lab. The apprenticeship course requires an inmate to complete 144 hours of instruction per year and to complete 8,000 hours of total work in the dental lab. It takes approximately four years to complete the apprenticeship pro-

gram. If the inmate successfully completes the apprenticeship course, the inmate is certified as a Journeyman Dental Technician. Only one inmate at FMC Lexington has completed the national apprenticeship program. *Id.*

Concerning the thirteen Plaintiffs herein, Plaintiffs Rogers, Dellinger, Morales, Fugett, and Hannum are presently employed in the dental lab. However, Plaintiff Rogers is the only inmate currently enrolled in the apprenticeship program; she has been enrolled in the program since February 1993. Plaintiff McCoy was enrolled in the program from January 1993 to June 3, 1994, and Plaintiff Diaz was also enrolled in the apprenticeship program at one time; however, both Plaintiffs McCoy and Diaz were dropped from the program when they were transferred, at their request, to other institutions. Plaintiff Diaz was transferred to FCI Danbury, Connecticut, and works as a lab technician for the dentist at that facility. Plaintiffs Schwartzbach and Moore were dropped from the dental lab work detail for non-performance. Plaintiffs Balbuena and Caminero requested to be dropped from the dental lab work assignment. Plaintiff Archer is away from FMC Lexington on a writ; further, she is medically unable to work in the dental lab. Plaintiff de Vasquez was released from custody on June 22, 1994, and is no longer working in the dental lab. *Id.*

### Analysis

#### A. The *Bivens* claim

In bringing this *Bivens* action, Plaintiffs, thirteen female inmates at FMC Lexington, are attempting to prevent the BOP, which decided in July 1993 to convert FMC Lexington to an all-male institution, from transferring them to other female institutions until they had completed a national apprenticeship program offered through the dental lab and had become certified Journeymen Dental Technicians or until they had been released from custody. Plaintiffs' complaint is premised on the assumption that they have a vested interest in working in the dental lab and/or that they have a constitutional right to become certified Journeymen Dental Technicians by completing the national apprenticeship program offered through the dental lab.

However, Plaintiffs' complaint is based on an erroneous proposition. An inmate has no constitutional right to a specific educational or vocational program in prison or in not being transferred to another institution where the educational or vocational programs are less comprehensive. It is well settled that an inmate has no constitutional right to be rehabilitated. *Rhodes v. Chapman,* 452 U.S. 337, 348, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981); *Garza v. Miller,* 688 F.2d 480 (7th Cir.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Lato v. Attorney General of the United States,* 773 F.Supp. 973, 998 (W.D.Tex.1991), *aff'd.,* 763 F.2d 325 (8th Cir.1985); *Termunde v. Cook,* 684 F.Supp. 255, 259 (D.Utah 1988); *Buffington v. O'Leary,* 748 F.Supp. 633, 634 (N.D.Ill.1990).

Although an inmate may not be transferred in retaliation for having exercised a constitutional right, *Jackson v. Cain,* 864 F.2d 1235, 1248 (5th Cir.1989) and *Murphy v. Missouri Dept. of Correction,* 769 F.2d 502 (8th Cir.1985), an inmate has no inherent constitutional right to be housed in a particular institution, and an inmate can be transferred for any reason, with the exception of a retaliatory transfer, as noted above, or for no reason at all. *Beard v. Livesay,* 798 F.2d 874 (6th Cir.1986); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Williams v. Walls,* 744 F.2d 1345 (8th Cir.1984); *Brown–Bey v. United States,* 720 F.2d 467 (7th Cir.1983); *Persico v. Gunnell,* 560 F.Supp. 1128 (S.D.N.Y.1983); and 18 U.S.C. § 3621(b).

Additionally, an inmate has no constitutional right to be assigned to a particular job. *Flittie v. Solem,* 827 F.2d 276, 279 (8th Cir.1987); *Twyman v. Crisp,* 584 F.2d 352, 356 (10th Cir.1978); *Buffington v. O'Leary,* 748 F.Supp. at 634.

The United States Attorney General has the exclusive authority to designate an inmate's place of incarceration. The district courts are not authorized to order that an

inmate be placed in a particular institution. Under Title 18 U.S.C. § 4042, the BOP has charge of the management and regulation of all penal institutions; this statute also authorizes the BOP to provide an inmate with suitable living quarters.

Further, Title 18 U.S.C. § 3621(b) permits the BOP to designate an inmate's place of confinement. Specifically, the BOP may designate any available penal or correctional institution that meets minimum standards of health and habitability as established by the BOP, whether such institution is maintained by the BOP or otherwise, and whether such facility is located in or out of the judicial district in which the inmate was convicted, that the BOP determines to be suitable and appropriate for the inmate.

In deciding how to meet an inmate's needs and to protect the community, prison officials are faced with numerous choices, each posing a potential risk to the inmate and to others. Choosing the optimal measures to prevent violence and to maintain prison security is left to the discretion of prison officials and is generally not subject to judicial review. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Actions by prison officials made in bad faith and for no legitimate purpose are subject to judicial review. Even so, the court is not to substitute its judgment for that of prison officials who have made a considered choice among alternatives. The internal security of a prison is peculiarly a matter normally left to the discretion of prison administrators. *Rhodes v. Chapman*, 452 U.S. at 349, 101 S.Ct. at 2400.

In a nutshell, the BOP's policies and regulations concerning the placement and classification of inmates are, at a minimum, related to legitimate security interests and should be left to the judgment of professional prison administrators. In the present action, the BOP was faced with the closing of the all-male facility at FMC Carville, Louisiana, and had to place these male inmates elsewhere within the federal prison system. In conjunction with that decision, the BOP also had to decide how to use the property at the Carswell Air Force Base (land and buildings, including a hospital) at Carswell, Texas,

that had been donated to it by the U.S. Department of Defense. The BOP elected to make Carswell an all-female institution, to convert FMC Lexington to an all-male institution, and to transfer the female inmates presently housed FMC Lexington to other institutions, including Carswell. In making the decision to transfer the female inmates from FMC Lexington, the BOP considered security levels and cost containment of male inmates. The factors pertaining to the female inmates that entered into this decision were demographic distribution and access to services, programs and family contact. (*See* Exhibits 1 and 4 to *Defendants' Memorandum of Law in Support of Motion to Dismiss*—Docket Entry #21). The decision of the BOP concerning the use of prison facilities is not subject to judicial review. *Rhodes v. Chapman, supra.*

As seen by the applicable statutory and case law, an inmate has no constitutional right to be housed in a particular facility and, short of a transfer made in retaliation for having exercised a constitutional right, may be transferred to another institution for any reason or for no reason. Further, an inmate has no constitutional right to a particular job assignment and no constitutional right to be rehabilitated. Consequently, Plaintiffs have no viable cause of action under *Bivens* to prevent the BOP from transferring them to other institutions, and the Defendants are entitled to summary judgment on Plaintiffs' *Bivens* claim.

## B. The Title IX claim

Plaintiffs also contend that their impending transfer to other institutions as the result of the BOP's decision to convert FMC Lexington to an all-male facility violates Title IX of the Education Amendments of 1972 of Title 20 U.S.C. §§ 1681–1688, which forbids sex discrimination under any education program and/or activity that receives any type of federal assistance. As grounds for this claim, Plaintiffs assert that if they are transferred to other institutions, they will be unable to complete the national apprenticeship program offered through the dental lab at FMC Lexington since there are no dental

labs at any other female correctional institution. The other four dental labs are located at all-male facilities, and with the conversion of FMC Lexington to an all-male institution, all of the dental labs will be located at all-male institutions. Therefore, Plaintiffs argue that as a result of the conversion of FMC Lexington to an all-male facility, they will have no opportunity to complete the national apprenticeship program and thus will never become Journeymen Dental Technicians.

## Analysis

Title 20 U.S.C. § 1681(a) provides that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education *program or activity receiving Federal assistance,* except that: ... (emphasis added).

The term "program or activity" is defined in 20 U.S.C. § 1687 to be applicable to the following governmental entities:

(1)(A) a department, agency, special purpose district, or other instrumentality of *a State or of a local government;* or

(B) the entity of *such State* or *local government* that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government; ... (emphasis added).

It is evident from the definition of "program or activity" contained in 20 U.S.C. § 1687 that 20 U.S.C. § 1681(a) pertains only to state or local government programs that receive federal financial assistance. The statute is silent as to the United States and its agencies. Since the dental lab at FMC Lexington is not "a department, agency, special purpose district, or other instrumentality of *a State* or of *a local government,*" as 20 U.S.C. § 1687(1)(A) defines such a program or activity that is covered by 20 U.S.C. § 1681(a), the Court concludes that Title IX is not applicable to the national apprenticeship program offered to federal inmates through the dental lab at FMC Lexington.

This holding is consistent with a statement by the United States Supreme Court in *Franklin v. Gwinett County Public Schools,* 503 U.S. 60, 64, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) that "analysis of Title IX and Title VI ... has developed along similar lines." Title VI applies only to those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary. *Soberal–Perez v. Heckler,* 717 F.2d 36 (2nd Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984). Thus, it is clear that Title IX, like Title VI, concerns only non-federal entities, such as state and local governments, that receive federal financial assistance. Accordingly, Plaintiffs have no viable cause of action against the Defendants under Title IX, and the Defendants are entitled to summary judgment on Plaintiffs' Title IX claim.

## III. CONCLUSION

Based on a review of the statutory and case law applicable to Plaintiffs' *Bivens* claim and Plaintiffs' Title IX claim, for the reasons stated above, the Court concludes that Plaintiffs' claims under *Bivens* and Title IX are without merit and that as a matter of law, the Defendants are entitled to summary judgment on these claims. Having resolved this action on the merits of Plaintiffs' claims under *Bivens* and Title IX, the Court need not address the Defendants' remaining arguments advanced in support of their motion to dismiss or for summary judgment.

An Order and Judgment in accordance with this Memorandum Opinion will be entered on the same date herewith.

## ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on the same date herewith,

**IT IS HEREBY ORDERED and ADJUDGED** that:

1. As a matter of law, Plaintiffs have failed to state a claim against the Defendants under *Bivens* and under Title IX for which relief can be granted.

2. The Defendants' motion to dismiss, or in the alternative, for summary judgment on all claims, [DE # 20] is **GRANTED.**

3. The Defendants are hereby awarded summary judgment on Plaintiffs' *Bivens* claim and Plaintiffs' Title IX claim.

4. All claims having been resolved on the merits, this action is **DISMISSED** and **STRICKEN** from the docket.