UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1166
_____

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                    versus

RONALD L. VODA, SR.,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court for the
            Northern District of Texas
_____

(June 16, 1993)

Before GOLDBERG, GARWOOD and WIENER, Circuit Judges.

GARWOOD, Circuit Judge:

    Defendant-appellant, Ronald Voda, Sr. (Voda), was sentenced to
a term of 5 years' probation and a $3,000 fine, payable $60 a
month, on his conviction, pursuant to his guilty plea, of one count
of negligent discharge of a pollutant through a point source into
navigable water in violation of a federal permit, contrary to 33
U.S.C. § 1319(c)(1)(A), a misdemeanor.  Voda appeals, challenging
only certain aspects of his sentence, namely the fine and the
following two conditions of his probation, *viz*:  (1) that he
surrender to the Mansfield Law Enforcement Center (Mansfield) on

June 2, 1993, to serve sixty calendar days; and, (2) that he not possess a firearm during the probation. Concluding that the district court erred in imposing these two conditions, we vacate Voda's sentence and remand for resentencing.

### Facts and Proceedings Below

Voda owned and operated Voda Petroleum, now defunct, an oil recycling facility in White Oak, Texas. On February 10, 1989, special agents of the Environmental Protection Agency (EPA) sampled effluent discharging from Voda's plant. Test results on three of the four samples taken revealed that more oil and grease discharged into the water system than Voda's federal permit allowed. Based on these test results, Voda pleaded guilty to one count of negligent discharge of a pollutant.

The Presentence Investigation Report (PSR) reflects that Voda has no prior conviction and that Voda and his wife have a negative net worth of $19,555.97 and a negative monthly cash flow of $503.75. The PSR does not indicate that Voda has any prospects for increasing his cash flow or net worth over the next several years in his job as a high school chemistry teacher.[1] The United States did not challenge the PSR's recitations concerning Voda's financial condition.

The PSR does not indicate that Voda had any history involving or being prone to violence or misuse of firearms. Voda likes to hunt and owns several firearms that he uses for recreational

---

[1]  After his company went under, Voda, who is fifty-six, returned to college, received a Bachelor of Science in Chemistry from the University of Texas, and is now working in his second year as a high school chemistry teacher.

2

hunting.

As a result of Voda's guilty plea, he was sentenced to a $3,000 fine and 5 years' probation subject to numerous conditions. Four of the conditions are: (1) that Voda surrender to Mansfield on June 2, 1993, to serve 60 calendar days; (2) that he reside at the County Rehabilitation Center, 313 Ferrell Place, Tyler, Texas, for a period of 120 days; (3) that he shall not possess a firearm during his probation; and (4) that he pay the $3,000 fine at a rate of $60 per month beginning 60 days after his release from Mansfield. Mansfield is a local jail housing, among others, offenders awaiting trial on a range of offenses including violent felonies.

After the sentence was imposed, Voda filed a Motion to Correct Sentence pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 35(c), which was denied. Voda appeals challenging the fine, the designation of Mansfield as the place to serve the sixty days, and prohibition of firearms possession.

**Discussion**

*I. Designating Place of Confinement*

Voda contends that, under 18 U.S.C. § 3563(11), the district court lacked the authority to designate the place of his confinement because the statute requires that the Bureau of Prisons designate the place of confinement once the district court imposes sentence for a specified period of time.[2] Thus, Voda contends that

---

[2] Because this arrangement better accommodates his work schedule, Voda expressly waived any argument that the imposition of sixty days' confinement served over a sixty day period is "imprisonment," as opposed to intermittent confinement, and thus

3

the district court erred in sentencing him to serve time at Mansfield.[3]

As a condition of probation, 18 U.S.C. § 3563(b)(11) provides that a convict may be required to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation."  18 U.S.C. § 3563(b)(11) (West Supp. 1993). *See* U.S.S.G. § 5C1.1(c)(3).  The statute's plain language suggests that only the Bureau of Prisons may determine the place of confinement for sentences imposed under it.

No prior cases have addressed whether a sentencing judge may, as a condition of probation, designate the place of confinement for sentences imposed under section 3563(b)(11).  However, many cases have addressed the authority of a judge to specify the place of incarceration where the sentence calls for imprisonment as opposed to probation under 18 U.S.C. § 3621.[4]  These cases hold that a court may recommend that a sentence imposed under section 3621 be served in a particular prison or jail, but that only the Bureau of Prisons has the actual authority to designate the place of

---

in violation of section 3563.  *See United States v. Anderson*, 787 F.Supp. 537, 539 (D. Md. 1992).

[3]    Voda does not contest his sentence to the County Rehabilitation Center in Tyler, a community corrections facility. We stayed the Mansfield portion of the sentence pending resolution of the appeal.

[4]    Similarly to section 3563, 18 U.S.C. § 3621 provides expressly that "The Bureau of Prisons shall designate the place of the prisoner's imprisonment."

incarceration. *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) (citing *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984), *cert. denied*, 105 S.Ct. 1179 (1985)) (*Dragna* interpreted 18 U.S.C. § 4082(a), which was replaced by section 3621, which *Jalili* addressed). *See generally*, *United States v. Wilson*, 112 S.Ct. 1351 (1992). The Bureau of Prisons is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences. *Id.*

In other cases, courts rejected prisoners' requests to be sentenced to particular jails, holding that only the Bureau of Prisons has that authority. *See, e.g.*, *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (rejecting prisoner's section 1983 action challenging decision of Bureau of Prisons to transfer prisoner to new jail); *Barden v. Keohane*, 921 F.2d 476, 479-83 (3d Cir. 1990). It is clear that the district court lacked the authority to designate the place of confinement in sentencing Voda under section 3563(b)(11).

The United States argues that even if the district court lacked the authority to designate the place of incarceration under 3563(b)(11), the designation of Mansfield was permitted under section 3563(b)(12), which, it asserts, allows a district court to designate the community corrections facility at which one is required to reside.[5] Section 3563(b)(12) provides that as a condition of probation a convict may be required to "reside at, or participate in the program of, a **community corrections facility**

---

[5] There is no indication that the district court designated Mansfield under section 12 as opposed to section 11.

(including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation."  18 U.S.C. § 3563(b)(12) (West Supp. 1993) (emphasis added).

Assuming that a district court may designate the place of confinement when imposing sentences under section 3563(b)(12), nevertheless a community corrections facility is not a jail and the Mansfield Corrections Facility is a **jail**, not a community corrections facility.[6]   Although the term "community corrections facility" is not defined by the statute,[7] the notes to United States Sentencing Guideline (U.S.S.G. or Guideline) section 5F1.1 define "community confinement" as "residence in a community treatment center, halfway house, restitution center, mental health facility . . . ."   The term "community confinement" in the Guidelines is evidently intended to interpret section 12, as reflected by its use in U.S.S.G. § 5C1.1(c)(3).  Also, based on its placement in section 3563(b), "community corrections facility" appears to refer to rehabilitation facilities and half-way houses (such as the County Rehabilitation Center where Voda is required to reside after his confinement at Mansfield) and not jails.  Section 12 follows section 11 on confinement with the Bureau of Prisons and is contained in a section dealing with conditions of probation, not conditions of imprisonment.  Normally, conditions of probation are

---

[6]     The Sixth Circuit held that district courts have the authority to designate the place of confinement under U.S.S.G. § 5C1.1(d), which corresponds to 3563(b)(12). *Jalili*, 925 F.2d at 894.

[7]     The legislative history also does not define the term. 1984 U.S.C.C.A.N., at 3182.

intended to be less restrictive than imprisonment.[8]  Thus, the term community corrections facility does not refer to jails.

Because section 3563(b)(11) specifically states that the condition of probation is that one "remain in the custody of the Bureau of Prisons" and because Mansfield is a jail and not a community corrections facility, the district court erred in requiring that Voda's sixty days' confinement be served at Mansfield.  On remand, the district court may require Voda to serve a period of confinement under the custody of the Bureau of Prisons with a recommendation as to the place of confinement, may require him to serve at a community corrections facility and perhaps designate the place of such confinement, or may remove this condition of probation altogether.

*II. Firearm Prohibition*

Next, Voda objects to the condition that prohibits him from possessing a firearm during his probation.  No reason was given by the district court for imposing this condition, nor is any suggested by the PSR or anything else in the record.  The United States argues that the firearm prohibition is warranted because Voda's possession of a firearm may pose a risk to his probation officer's safety, because Voda committed a serious offense, and because this type of decision should be left to the discretion of the district court.

---

[8]  Often a sentence to a community corrections facility is a downward departure from a recommended sentence of imprisonment. *See United States v. Parker*, 902 F.2d 221, 222 (3rd Cir. 1990) ("We think it clear that a period of confinement [at a community corrections facility] as a condition of probation . . . cannot possibly be equated with an equivalent period of imprisonment.").

7

Prohibition of firearm possession is one of the permissible discretionary conditions of probation expressly listed in section 3563(b). *Id*. (9). However, section 3563(b) provides that its listed conditions may be imposed "to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)."[9]

Under the Guidelines, firearm prohibition may be imposed as a condition of probation:

"If the instant conviction is for a felony, or if the

---

[9]    Section 3553(a)(1) and (2) provide:

"**§ 3553.   Imposition of a sentence**

   **(a) Factors to be considered in imposing a sentence.**SQThe court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall considerSQ

      (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

      (2) the need for the sentence imposedSQ
         (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
         (B) to afford adequate deterrence to criminal conduct;
         (C) to protect the public from further crimes of the defendant; and
         (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

8

defendant was previously convicted of a felony or used a firearm or other dangerous weapon in the course of the instant offense, it is recommended that the court impose a condition prohibiting the defendant from possessing a firearm or other dangerous weapon." U.S.S.G. § 5B1.4(b)(14).

Section 5B1.4(b) gives the sentencing court discretion in deciding whether or not to impose this condition. *Id.* "Discretionary conditions of probation . . . must be `reasonably related' to the goals of sentencing and involve `only such deprivations of liberty and property as are reasonably necessary.'" *United States v. Stafford*, 983 F.2d 25, 28 (5th Cir. 1993) (citing 18 U.S.C. § 3563(b) (condition that tax evader give probation officer access to any financial information and fully cooperate with IRS in years not subject to litigation was improper); *United States v. Pendergast*, 979 F.2d 1289 (8th Cir. 1992) (condition that wire fraud convict not possess alcohol excessive since no evidence showed convict abused alcohol). The general purpose of the firearm prohibition is to prevent convicts from using firearms to harm others in the future; other purposes may include punishment and deterrence.

Neither Voda's charged offense nor the relevant conduct involving that offense had any relevance to or connection with the use or possession of any firearm or dangerous weapon. Voda was convicted of a nonviolent misdemeanor. No persons were directly endangered. Voda's offense involved merely negligent misconduct, and thus does not suggest that Voda had any intent to harm others or to violate the law. No evidence in the PSR indicates that Voda has any tendency to violence in general or to abuse of (or

9

carelessness with) firearms or that he poses any danger whatever to the public. Voda is still allowed to teach high school. The chance that Voda might shoot his probation officer is as unlikely here as in any misdemeanor conviction. Since Voda's past behavior does not indicate that his possession of firearms makes him dangerous, there is no need to impose this condition to protect the public from future crimes by Voda. Imposing this condition of probation also does not serve the punishment and deterrence goals of sentencing under the Guidelines. Therefore, the district court abused its discretion in imposing this firearms prohibition as a condition of probation.

*III. Imposition of Fine*

As a condition of probation, the district court fined Voda $3,000, to be paid at a rate of $60 per month beginning after Voda's release from Mansfield.[10] Voda contends that the district court erred in thus fining him without any explanation, because the court adopted the PSR findings reflecting Voda's inability to pay.

The PSR shows that Voda has both a negative net worth and a negative current and anticipated cash flow. At age fifty-six, Voda is beginning a new career as a school teacher, a career in which he will likely not receive substantial salary increases over the next several years. Voda is currently supporting his wife and a son who is over eighteen, but currently unemployed. *See* U.S.S.G. § 5E1.2(e)(3). Voda's future ability to pay a fine is questionable.[11]

---

[10] 33 U.S.C. § 1319(c) specifies that the fine range is between $2,500 and 25,000 for Voda's crime.

[11] There is also no evidence that Voda may have any hidden

10

*See United States v. Pattan*, 931 F.2d 1035, 1044 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2308 (1992) (fine vacated because it interfered with convict's duty to support his family).[12] As the PSR reflected Voda's current and future inability to pay and the government offered no contrary evidence, the imposition of a $3,000 fine appears unusual. *See United States v. Rowland*, 906 F.2d 621, 623-24 (11th Cir. 1990) (fine vacated since no evidence showed current or future ability to pay). *See Rivera*, 971 F.2d at 895 (fine remanded for expression of reasons in light of confused nature of record).

Because the district court did not give reasons for its decision to fine Voda, it is difficult for us to review the district court's decision in this respect.[13] Since we are vacating

---

assets that he could use to pay the fine or relatives with sufficient assets to help him. *See United States v. Hagmann*, 950 F.2d 175, 185 (5th Cir. 1991), *cert. denied*, 113 S. Ct. 108 (1992) (that Hagmann was convicted of importing almost seven tons of marihuana suggested that he had access to funds in excess of those listed in his in *forma pauperis* affidavit and justified $100,000 fine). In his memorandum filed below prior to sentencing, Voda cited the PSR, expressly asserted his complete inability to pay a fine, and requested that no fine be imposed.

[12]    Voda's situation differs from that in *United States v. Matovsky*, 935 F.2d 719 (5th Cir. 1991). There the defendant was a relatively young, unemployed graduate student, with no dependents, capable of obtaining future employment with a sufficient income to allow him to pay his fine over time. *Matovsky*, 935 F.2d at 720-723; *United States v. O'Banion*, 943 F.2d 1422, 1432 & n.11 (5th Cir. 1991) (fine may be based on defendant's future ability to pay). Here, the United States did not offer any evidence below, beyond the PSR, showing Voda's ability to pay.

[13]    A court may impose a fine, even where a defendant demonstrates the current and future inability to pay it; however, a court generally should not impose a fine in that situation unless the facts show the need for such a punitive or equitable sanction. U.S.S.G. § 5E1.2 (d). *United States v. Rivera*, 971

Voda's sentence for other reasons, there is no need to review the district court's decision to fine Voda at this time.

If, on resentencing, the district court chooses to impose a fine, we suggest that the district court give reasons for its decision. Although our decisions in *Matovsky* and *Fair* may not require that a district court give reasons for imposing a fine in every case in which the PSR contains facts suggesting the defendant's inability to pay, but does not recommend against a fine, the special circumstances of this case suggest that reasons would at the least be most appropriate, and helpful in any subsequent appeal, should the court again impose a fine.[14]

---

F.2d 876, 895 (2d Cir. 1992); *United States v.Fair*, 979 F.2d 1037, 1041 (5th Cir. 1992); *United States v. Matovsky*, 935 F.2d 719, 721 (5th Cir. 1991); 18 U.S.C. § 3572 (West Supp. 1993 at 82); U.S.S.G. § 5E1.2. However, neither the Constitution, nor the applicable sentencing statutes, nor the sentencing guidelines categorically prohibit a court from ever imposing a fine where the defendant has proven his inability to pay it. Prior to the enactment of the Guidelines, ability to pay was not considered as a major factor in a court's decision to impose a fine. Instead, ability to pay was considered later when the government attempted to collect the fine. *See e.g., United States v. Merritt*, 639 F.2d 254, 257 (5th Cir. 1981). Constitutionally, courts are limited in the penalty they can impose for nonpayment of criminal fines because of inability to pay. *Bearden v. Georgia*, 103 S.Ct. 2064, 2068-71 (1983) (indigency no bar to *imposing fine*); *Williams v. Illinois*, 90 S.Ct. 2018, 2023 (1970) (imprisonment, beyond any already imposed prison sentence, could not be imposed as a penalty for inability to a pay a fine.); *Tate v. Short*, 91 S.Ct. 668, 671 (1971). In 1986, the statute involving fines of indigent prisoners, 18 U.S.C. § 3569, was repealed. New 18 U.S.C. § 3572 states that the ability to pay shall be considered when a court imposes a fine. 18 U.S.C. § 3572. Similarly, Section 5E1.2(f) of the Guidelines provides that if the defendant shows an inability to pay, "the court may impose a lesser fine or waive the fine altogether." U.S.S.G. § 5E1.2(f); *Fair*, 979 F.2d at 1041.

[14]    Normally, a district court does not have to express reasons for imposing a fine as long as it is shown that the judge considered the defendant's ability to pay. *Matovsky*, 935 F.2d at

12

## Conclusion

As the district court lacked the authority to require Voda to serve his confinement at Mansfield, and as the court abused its discretion in imposing firearms prohibition as a condition of probation, Voda's sentence is vacated and this case is remanded for resentencing. The mandate shall issue forthwith.

SENTENCE VACATED and CAUSE REMANDED

---

722 (no PSR showing of future inability to pay). In *Matovsky*, we held that where the PSR contains fact findings suggesting a present inability to pay, but **not recommending** against a fine, "`the appellate court will not reverse the fine merely because no express finding was made but will review the finding of ability to pay necessarily implied by such consideration.'" *Id.* (citation omitted).

We held in *United States v. Fair*, that although the defendant normally bears the burden of proof on the issue of inability to pay: "[A] defendant may rely on the PSR to establish his inability to pay . . . . When a sentencing court adopts a PSR which recites facts showing limited or no ability to pay a fine the government **must** come forward with evidence showing that a defendant can in fact pay a fine before one is imposed." 979 F.2d at 1041 (emphasis added).

If a defendant may truly rely on the unobjected to fact findings of a PSR, containing no recommendation, to prove his inability to pay, *Fair* suggests that a district court should give reasons for disagreement therewith. Similarly, although we held in *Matovsky* that we would not reverse a fine because reasons were not given where the PSR does not recommend against imposing a fine, we did not hold that a district court should not explain the reasons for its sentence. In *Matovsky*, the facts suggested a future ability to pay, and there was no objection below. The present case differs from *Matovsky* in these respects.

13