**UNITED STATES of America**

v.

**Tammy GUIRO, Defendants.**

**No. 93–CR–1384.**

United States District Court, E.D. New York.

May 17, 1995.

Zachary Carter, U.S. Atty., Brooklyn, NY by Jim Walden, for U.S.

Philip Katowitz, New York City, for defendant Tammy Guiro.

### *MEMORANDUM AND ORDER*

WEINSTEIN, Senior District Judge.

The issue presented is how to satisfy statutory sentencing objectives when the existing institutional structure cannot accommodate the appropriate sentence.

The defendant pled guilty to conspiracy to distribute and to possess with intent to distribute cocaine. 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(B). Because of her extensive cooperation with the government, which provided a 5K1 letter, her personal characteristics and her high prospects for rehabilitation, the court announced its intention to depart downward, sentencing her to eight months in a halfway house, provided that a suitable one could be located near her work and family home in New Jersey. The probation department then determined that no facility meeting the proposed sentence's requirements exists in that state. Accordingly, defendant is sentenced instead to three years of probation, conditioned on eight months of home confinement and 500 hours of community service, plus a $50 special assessment.

## I. FACTS

In light of defendant's role as a minimal participant in the offense, her acceptance of responsibility and her lack of a criminal background, defendant faced a Guidelines sentence of 70 to 87 months. The statutory minimum for her offense is five years. *See* 21 U.S.C. § 841(b)(1)(B). The government submitted a "5K1 letter" authorizing the court to depart below both the statutory minimum and the Guidelines range. *See* 18 U.S.C. § 3553(e); 28 U.S.C. § 994(n); U.S.S.G. 5K1.1. Given the characteristics of her crime, her lack of a criminal history and her cooperation with the government, Guiro would be a candidate for the "safety valve" provision in the Violent Control and Law

Enforcement Act of 1994. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

Guiro is an immature young female, slight of frame and frightened, who is determined and has the capacity to put her crime behind her. She was drawn into the drug conspiracy through her romantic attachment to a drug dealer.

She lives with her mother and her four siblings in New Jersey. Hers is a close-knit family. All its members appeared in court for· her sentencing where their concern and support were apparent. She has been continuously employed as a key punch operator earning $8.49 per hour at a position that she has held since August, 1993. She has had no prior brush with the law.

Immediately following her arrest, the defendant embarked on a course of full cooperation that has proved fruitful. Her assistance led .to the arrest and guilty pleas of several drug coconspirators. Serious efforts to intimidate her, including the setting on fire of both her own and her mother's cars, and the presence of a coconspirator "standing watch" outside of her house for a period prior to her testimony, did not deter her from aiding the government.

While some halfway houses are located in New Jersey, none are currently under contract with the federal government. Consequently, federal defendants from New Jersey sentenced to government halfway houses must serve in Manhattan or Brooklyn.

## II. LAW

Section 3553(a) of Title 18 directs courts to consider a number of factors in order to impose sentences that comply with the statutory goals of sentencing. They include the nature of the offense, the defendant's characteristics and history, the need to deter future criminal conduct by the defendant or others, the possibility of providing education or other forms of rehabilitative treatment, and "the kinds of sentences available." 18 U.S.C. §§ 3553(a)(1)–(7). *See United States v. Abbadessa,* 848 F.Supp. 369, 378–79 (E.D.N.Y. 1994), *vacated, remanded sub nom., United States v. DeRiggi,* 45 F.3d 713 (2d Cir.1995); *United States v. Concepcion,* 795 F.Supp.

1262, 1271–73 (E.D.N.Y.1992), *disapproved on other grounds, United States v. DeRiggi,* 45 F.3d 713 (2d Cir.1995). These factors incorporate the goals of consistency, rehabilitation, retribution and deterrence, and the principle that the punishment be "not greater than necessary." *See* 18 U.S.C. § 3553(a). *DeRiggi* does not inhibit an appropriate sentence in the instant case.

One factor rarely mentioned by sentencing courts is the statutory directive to consider "the kinds of sentences available." *See* 18 U.S.C. § 3553(a)(3). Only one published opinion to date has construed this provision. In *United States v. Wollenzien,* 972 F.2d 890 (8th Cir.1992), the Eighth Circuit court of appeals held that section 3553(a)(3)'s requirement that the trial court consider "the kinds of sentences available" does not mean that the trial court has to reject explicitly particular options on the record. Nonetheless, this factor is implicitly considered by courts at every sentencing proceeding. Courts face a multiplicity of options with every defendant—even under the rigid Guidelines regime—since a sentence may often combine incarceration, supervised release, mandatory participation in drug treatment programs, home confinement and other options. *See* U.S.S.G. § 5C1.1 (imprisonment options and substitutable punishments).

While the choices are many in theory, they may be far fewer in practice. *See* Janet L. Dolgin, *The Law's Response to Parental Alcohol and "Crack" Abuse,* 56 Brook.L.Rev. 1213, 1264 (1991) (national data showing that 67,000 people were on waiting lists for drug treatment programs, and that only 20% of those who need treatment receive it) (citing Joe Davidson, *Cries for Help: Some Addicts Beg for Drug Treatment, but Programs are Full,* Wall St.J., Sept. 4, 1990, at A1); *see also* Lisa Janovy Keyes, Comment, *Rethinking the Aim of the "War on Drugs": States' Roles in Preventing Substance Abuse by Pregnant Women,* 1992 Wis.L.Rev. 197, 204–05 (waiting lists at drug treatment programs and other barriers to treatment); Francis X. Clines, *Ex–Inmates Urge Return to Areas of Crime to Help,* N.Y. Times, Dec. 23, 1992, at A1 (similar). Particular communities, such as minority youth, pregnant women and peo-

ple who do not live in major cities, may be disproportionately affected by the limited availability of alternatives to incarceration, such as treatment programs. *See* Keyes, *supra* (pregnant women); Clines, *supra* (suggesting link between lack of alternatives to sentencing for minority communities and disparate sentencing of minority and white youths).

In addition to a lack of resources, judges' considerations of sentencing alternatives are constricted by another factor: courts lack the authority to designate a defendant's place of incarceration when the defendant is sentenced to a term of prison. That authority is vested in the Bureau of Prisons, which is directed to consider, but is not bound by, a court's recommendation:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> .    .    .    .    .
>
> (4) any statement by the court that imposed sentence—
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate. . . .

18 U.S.C. § 3621(b); *see United States v. Voda,* 994 F.2d 149, 151–52 (5th Cir.1993); *Hernandez v. United States Attorney General,* 689 F.2d 915, 917 (10th Cir.1982); *Archer v. Reno,* 877 F.Supp. 372, 377–78 (E.D.Ky. 1995); *see also United States v. Huss,* 520 F.2d 598, 602 (2d Cir.1975) (construing predecessor statute).

A less settled question is whether a court can designate the facility at which a defendant may reside pursuant to a sentence of probation. The applicable statute makes a distinction between people who remain in the custody of the Bureau, *see* 18 U.S.C. § 3563(b)(11), and those who do not, *see id.* § 3563(b)(12). Section 3563(b) of Title 18 provides:

> The court may provide, as . . . conditions of a sentence of probation, to the extent that such conditions are reasonably related to the [sentencing] factors set forth in [18 U.S.C.] section 3553(a)(1) and [18 U.S.C.] section 3553(a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in [18 U.S.C.] section 3553(a)(2), that the defendant—
>
> \*    \*    \*    \*    \*    \*
>
> (11) *remain in the custody of the Bureau of Prisons* during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation;
>
> (12) reside at, or participate in the *program of, a community corrections facility* (including a facility *maintained or under contract to the Bureau of Prisons* ) for all or part of the term of probation. . . .

(Emphasis supplied.) The term "community corrections facility" is not defined in the statute. "Community confinement" is, however, broadly defined in the Guidelines as

> residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, education programs, or similar facility-approved programs during non-residential hours.

U.S.S.G. § 5F1.1; *see also Voda,* 994 F.2d at 152.

With respect to the designation of facilities for probationary sentences imposed under section 3563(b)(11), the Bureau may be the final authority. *See Voda,* 994 F.2d at 151–52 (holding that statute authorizes the

Bureau, not district court judges, to designate the place of confinement for probationary sentences imposed pursuant to section 3563(b)(11)). Apart from section 3563(b)(11), courts are not precluded from designating the appropriate facility. The statutory language does not limit the court's ability to ascertain what programs and facilities are available and to choose the most appropriate one, resources permitting. Options such as residence in a community corrections facility or treatment facility, or participation in the programs of such facilities, may need to be available locally to be effective. Judges of the Eastern District of New York, in unpublished oral decisions, have, for example, provided for strict supervision of defendants by probation pending availability of appropriate local treatment facilities.

Courts must exercise the broadest authority using all available facilities—federal, state, local or private—to accommodate the polices set forth in the general sentencing statute. In choosing an appropriate facility, the court is not limited to facilities "maintained or under contract to the Bureau of Prisons," see 18 U.S.C. § 3563(b)(12). It may choose private or uncontracted facilities instead. Participation in the programs of such non-governmental facilities may be paid for by the defendant, by some arrangement for free treatment or by some other form of public payment that does not implicate the Bureau's resources or budget. If the court believes that a specific facility is required for a sentence imposed under section 3563(b)(11), and the Bureau and the court cannot agree, the court may impose some other condition such as residence in a community corrections facility, see id. § 3563(b)(12), or home confinement, see id. § 3563(b)(20).

The Bureau, in the instant case, contested the court's authority to designate a particular community corrections facility. It stated that it would interpret such a directive as merely a "recommendation." Telephone Conversation with Tony Garoppolo, Deputy Chief, Presentence, United States Probation Department, in Brooklyn, N.Y. (May 8, 1995).

The Bureau's position on its power to designate the halfway house seems unnecessarily rigid. A sentence to a halfway house or similar institution does not usually implicate the "legitimate security interest" that warrants delegating to "professional prison administrators" in the Bureau the decision about where prison sentences will be served. See Archer, 877 F.Supp. at 378. Fortunately, in specific cases, the Bureau has been quite flexible in accommodating the suggestions of the courts.

The location of the institution may be a significant factor in ensuring that the sentence satisfies statutory goals. Geographic separation from family may be an unwarranted additional cruelty on a defendant that, if left unaddressed, would result in a sentence "greater than necessary" under the statutory scheme. Cf. Justin Brooks & Kimberly Bahna, "It's a Family Affair"—The Incarceration of the American Family: Confronting Legal and Social Issues, 28 U.S.F.L.Rev. 271 (1994) ("retribution" goal of sentencing may be served by "painful" separation of the defendant from his or her family). Moreover, disrupting the defendant's employment, and loosening her ties to the people who are most able to influence her positively, may inhibit the defendant's rehabilitation. Id.

Courts cannot overlook the interrelated impact of sentencing on defendant and her family. The defendant's removal, through either a sentence of imprisonment or one of probation conditioned on a period of confinement outside the state, can have a devastating effect on those left behind. Courts routinely consider this factor in determining whether to sentence a defendant below the applicable Guidelines range. See, e.g., United States v. Johnson, 964 F.2d 124 (2d Cir. 1992); United States v. Joyner, 924 F.2d 454, 459–61 (2d Cir.1991); United States v. Rose, 885 F.Supp. 62 (E.D.N.Y.1995); United States v. Ekwunoh, 888 F.Supp. 369, (E.D.N.Y.1994); United States v. McGee, 802 F.Supp. 843 (E.D.N.Y.1992); United States v. Pokuaa, 782 F.Supp. 747 (E.D.N.Y.1992). It is no less a consideration in determining the "type of sentence" to impose—including the type of facility or program and its loca-

tion—especially where the sentencing options are many, as is the case with probationary sentences.

## III. APPLICATION OF FACTS TO LAW

The defendant is well on her way to rehabilitation. She is fully employed and is living with her loving family. She has demonstrated genuine remorse for her wrongdoing. She has done everything in her power to assist the government in securing convictions against her coconspirators at great risk to her own safety and that of her family.

The pattern of women being drawn into the drug trade through psychological manipulation and physical abuse by the men in their lives is recurrent. *See, e.g., United States v. Ekwunoh,* 813 F.Supp. 168, 179–80 (E.D.N.Y.), *sentence vacated,* 12 F.3d 368 (2d Cir.1993), *on remand,* 888 F.Supp. 364, (E.D.N.Y.1994), *order supplemented,* 888 F.Supp. 369, (E.D.N.Y.1994); *United States v. Gaviria,* 804 F.Supp. 476 (E.D.N.Y.1992). *See generally* Myrna S. Raeder, *Gender Issues in the Federal Sentencing Guidelines and Mandatory Minimum Sentences,* 8 Crim.Just. 20 (American Bar Association, Fall 1993). The presence of this pattern in the instant case fortifies the government's position that Guiro was a minimal participant and merits a downward departure, and the court's view that the defendant's prospects for rehabilitation are substantial.

While some form of punishment is required for consistency in sentencing and deterrence of future misconduct by the defendant and other potential criminals, incarceration in another state would be counterproductive. The optimal sentence is eight months in a halfway house near to the defendant's work and home. That sentence would permit the defendant to benefit from the positive influence of her nearby family and to maintain her productivity to society as a skilled and steadily employed worker. It would also permit her to continue to contribute to her family's welfare. Unfortunately, that sentence is not available because an appropriate facility does not exist.

## CONCLUSION

The defendant is sentenced to three years of probation, conditioned on eight months of home confinement and 500 hours of community service, plus a $50 special assessment. She may leave her home for work, religious observances and medical treatment during the period of home incarceration.

SO ORDERED.