**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Audrey D. THOMAS, Defendant–Appellant.**

No. 98–3948.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1999.

Decided July 7, 1999.

Daniel P. Bach (argued), Peggy A. Lautenschlaer, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Donald W. MacPherson (argued), MacPherson & McCarville, Phoenix, AZ, for Defendant–Appellant.

Before POSNER, Chief Judge, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Audrey Thomas appeals the sentence she received after pleading guilty to a single count of filing a false employment tax return in violation of 26 U.S.C. § 7206(1). For the reasons stated herein, we affirm.

## I. BACKGROUND

Audrey Thomas was the president of Mobile Transport Systems, Inc. ("Mobile Transport"), a trucking firm, which in 1993 changed its name to Safety and Driver Services, Ltd. ("Safety and Driver"). Thomas's husband, Harvey, was the safety director for the trucking business until his death in 1994. From 1972 through 1995, the defendant had a number of run-ins with the government regarding her failure to file tax returns. For instance, from 1972 to 1980, a revenue officer repeatedly attempted to secure delinquent tax returns, known as "941s" from Thomas. The officer reported that his encounters with Thomas were hostile and caustic. In 1995, IRS agents searched Thomas's business and discovered that she had been underreporting tax withholdings from her employees and keeping the proceeds for herself. The ensuing investigation showed that Thomas had failed to pay $345,404.28 in federal taxes from 1990 through 1993.

Thomas was charged with seven counts of filing false quarterly tax returns as president of Mobile Transport, four counts of filing false quarterly tax returns as president of Safety and Driver, and five counts of failing to deposit withheld income taxes, social security taxes and Medicare taxes for employees of both incarnations of the business. Pursuant to a written plea agreement, the defendant pled guilty to a single count of filing a false quarterly tax return on September 6, 1994 and the government agreed to recommend a sentence reduction based on Thomas's acceptance of responsibility. However, following execution of the plea agreement, but prior to the sentencing hearing, Thomas filed twelve objections to the presentence report. Among the objections was her claim that she had a dependant personality and that her abusive husband caused her to file false tax returns. She made this assertion despite the fact that the conduct underlying the single count to which Thomas pled guilty occurred after the death of her husband in 1994. Based on these objections, the government made no recommendation about acceptance of responsibility.

At the sentencing hearing on November 6, 1998, both parties presented evidence regarding acceptance of responsibility and downward departures. Thomas argued in particular for downward departures based on (1) diminished mental capacity pursuant to USSG § 5K2.13 because of her dependant personality; (2) the lack of a halfway house near her home or work; and (3) the fact that she would be subject to civil penalties following her conviction for tax fraud. The district court denied a reduction for acceptance of responsibility, finding that Thomas's attempt to blame her dead husband for her criminal actions was inconsistent with acceptance of responsibility. In fact, the district court found that Thomas was in control of her actions at all times. Judge Crabb also refused to depart downward based on diminished mental capacity, lack of a halfway house nearby or the civil penalties that Thomas would be facing. The district court sentenced Thomas to 24 months imprisonment and imposed a $5000 fine.

Thomas now appeals, claiming that in choosing not to depart downward based on diminished mental capacity, the district court misapplied the Sentencing Guidelines. She also challenges the district court's decisions not to reduce her sentencing level for acceptance of responsibility or to depart downward on the grounds she offered.

## II. DISCUSSION

### A. USSG § 5K2.13, diminished capacity.

The Sentencing Guidelines allow for a downward departure "if the defendant committed the offense while suffering from a significantly reduced mental capacity." USSG § 5K2.13. According to the Application Note to § 5K2.13, a defendant has a "significantly reduced mental capacity" if she "has a significantly impaired ability to (A) understand the wrongfulness of the

behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." Thomas claims that she should have received this departure because she was dependant on her abusive husband and this dependence, combined with her religious beliefs that the husband is in control of family decisions, rendered her incapable of controlling her behavior. In support of her claim, she introduced to the court a letter from a psychologist stating that she had a dependant personality. Thomas argues that the evidence presented to the court demonstrated that she fit the volitional aspect of diminished capacity and that the district court erred as a matter of law by focusing exclusively on the cognitive aspect of § 5K2.13, subpart (A), while ignoring her inability to control her behavior, subpart (B).

Thomas can only challenge the decision not to depart downward by showing that the district court misunderstood or misapplied the law, because when a district court recognizes its authority to depart under the guidelines but in an exercise of its discretion chooses not to do so, an appellate court lacks jurisdiction to review that decision. *United States v. Newman,* 148 F.3d 871, 878 (7th Cir.1998). Here, the record is clear that the judge knew she had the legal authority to depart, but opted not to in this case. The district court found that Thomas did not have diminished capacity, based in part on evidence showing that Thomas had a strong personality, possessed an impressive business acumen, and was the main decision-maker in her family. For instance, the court was shown a video made for a program about business entrepreneurs which portrayed the defendant as "tough, savvy and independent." Moreover, the district court credited the testimony of a witness who stated that Thomas made all the financial decisions for the business and often overruled some of the commitments her husband made to customers and employees.

Thomas bases her argument that the district court ignored the volitional aspect of § 5K2.13 on the court's comments that it would not give the departure because the evidence showed that Thomas understood that her conduct was wrong. It is true that some initial comments made by the sentencing judge indicated that she was focusing on the cognitive aspect of significantly reduced mental capacity. However, in the written order denying Thomas's motion for a stay of imprisonment pending resolution of her appeal, the judge stated:

> I refused to grant defendant a downward departure for diminished capacity because I did not believe that she had proved either that her ability to control her behavior was impaired or that it was her husband who directed her to file false tax returns.... I found it not believable that defendant was so dependent on her husband to make the decisions for the businesses she ran that her ability to control her behavior was impaired.

This language demonstrates that the district court knew it had the authority to depart under § 5K2.13, but exercised its discretion not to do so. Thus, we will not review the district court's decision not to depart downward.

**B. Acceptance of responsibility.**

Next, Thomas appeals the district court's decision not to reduce her offense level based on her acceptance of responsibility. USSG § 3E1.1 provides a reduction in the defendant's offense level if she "clearly demonstrates acceptance of responsibility for [her] offense." The district court found that Thomas's objections to the presentence report were inconsistent with true acceptance of responsibility. In fact, the experienced trial judge indicated that she had never before seen a defendant who retreated so far from accepting responsibility following a guilty plea. A district court's acceptance of responsibility determination is a factual finding which we

review for clear error. *United States v. Townsend,* 73 F.3d 747, 754 (7th Cir.1996).

■ Thomas argues that the district court's ruling establishes a catch–22 for defendants because it creates a situation where a defendant cannot on one hand maintain a diminished capacity argument which places some blame on another, and, on the other hand, expect a finding of acceptance of responsibility. However, Thomas's argument is off-base. While the court found Thomas's attempt to blame her actions on her dependant personality and her abusive husband inconsistent with a finding of acceptance of responsibility, it did so because it did not believe Thomas's diminished capacity argument. Based on the evidence presented, the sentencing judge believed that the defendant was raising it as a way of avoiding responsibility. The district court's decision here would not, as Thomas argues, preclude in all cases a finding of both diminished capacity and acceptance of responsibility. In fact, had the sentencing judge believed that Thomas had diminished mental capacity, perhaps she would have granted the acceptance of responsibility reduction. We conclude that the district court's decision not to reduce Thomas's sentence was not clearly erroneous.

## C. Breach of plea agreement.

■ Thomas argues that because the government backed off from its promise to recommend a reduction for acceptance of responsibility and made no recommendation at sentencing, she should have been allowed to withdraw from the plea agreement and the court erred in not allowing her to do so. A district court's decision on whether to grant a defendant's motion to withdraw his guilty plea is reviewed for abuse of discretion, *United States v. Martinez,* 169 F.3d 1049, 1054 (7th Cir.1999), while its decision whether a plea agreement has been breached is reviewed de novo. *United States v. Williams,* 102 F.3d 923, 927 (7th Cir.1996); *see also United States v. Mahique,* 150 F.3d 1330, 1332

(11th Cir.1998). We must objectively review the language of the plea agreement and hold the government to its literal terms. *Williams,* 102 F.3d at 927. The government is strictly bound to fulfill any express or implied promise made in exchange for a guilty plea contained in the plea agreement. *Id.*

■ Thomas's argument that the government breached its promise fails because the plea agreement allowed the government to withdraw its recommendation if Thomas did anything inconsistent with a true acceptance of responsibility. The district court found that Thomas's actions following her plea contradicted actual acceptance of responsibility because, after the parties entered into the agreement, Thomas raised twelve objections, many of them directly avoiding responsibility for her actions. As discussed above, for example, Thomas claimed that she acted at her husband's behest and that she was incapable of refusing his demands. Both the government and the district court believed that these objections were an attempt to avoid responsibility. This was a reasonable conclusion given the fact that Thomas's husband was already deceased when she filed the false tax return, the very conduct underlying the charge to which she pled guilty. In denying Thomas's request to withdraw the plea agreement, Judge Crabb stated, "I'm quite sure the government never expected this level of effort to disclaim responsibility because it's something I've never seen before." The plea agreement expressly allowed the government to withdraw its recommendation under these circumstances, and the government's decision not to recommend the reduction was premised on Thomas's failure to acknowledge that she was responsible for her criminal conduct in the face of overwhelming evidence that the crime was committed of her own free will.

In any event, the sentencing judge indicated that even if the government had recommended a reduction for acceptance of responsibility, she would not have grant-

ed it, based on her belief that the defendant had backtracked from her guilty plea more than any other defendant she had ever sentenced. Under these circumstances, the district court's determination that the government had not breached the plea agreement was not erroneous.

### D. Lack of halfway house nearby.

■ Thomas argues that the district court erred when it refused to depart downward based on the fact that there was not a halfway house near Thomas's residence or place of work. The defendant claims that this court can review that decision because it was based on the mistaken premise that the lack of a halfway house cannot be the basis for a downward departure. Whether a particular factor is a permissible basis for a downward departure from the applicable guideline is a question of law subject to plenary review. *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ At sentencing, Judge Crabb stated, "if [the lack of a halfway house] were reason for a downward departure, then all our women offenders would be entitled to downward departures." Thomas argues that the court's statements at sentencing demonstrate that the judge erroneously believed that it had no discretion to depart downward. The only authority on which Thomas relies for her argument that the absence of a halfway house is a permissible basis for a downward departure is *United States v. Guiro*, 887 F.Supp. 66 (E.D.N.Y. 1995). In *Guiro*, the court sentenced the defendant to eight months in a halfway house, but the probation department determined that no facility meeting the proposed sentence's requirements existed in the state of New York. *Id.* at 67. As a result, the court held that since no existing institution in the state could accommodate the sentence imposed, the court could instead order a sentence of home confinement. *Id.* Here, and unlike the situation in *Guiro*, there is no indication that the court ever considered placement in a half-way house as an alternative to imprisonment. Moreover, even if *Guiro* were binding on this court, nothing in that case dictates that a court consider the existence of a halfway house before imposing sentence. *Id.*

More importantly, this argument has been specifically rejected by another circuit. In holding that the absence of a halfway house did not constitute the kind of unusual circumstance warranting departure, the First Circuit noted, "[w]e can find no indication that the [Sentencing] Commission presumed that halfway houses would always be available for sentencing appropriate offenders." *United States v. Pozzy*, 902 F.2d 133, 139–140 (1st Cir. 1990). As Thomas has neither cited a single case from this circuit indicating that the district court should have considered whether a halfway house was near the defendant's home or workplace as the basis for a downward departure, nor provided a compelling reason why we should do so now, we see no reason to part company with the First Circuit on this issue. Therefore we conclude that the district court did not err when it denied Thomas a sentence reduction on this basis.

### E. Civil penalties as basis for downward departure.

■ Thomas's final argument is that the district court erred in refusing to depart downward based on the collateral consequences in a tax case. Again, we review de novo a district court's determination that a particular factor is a permissible basis for a downward departure. *Koon*, 518 U.S. at 100, 116 S.Ct. 2035. As with the previous issue, Thomas argues that this decision is reviewable because the district court refused to even consider it as a grounds for departure, stating "collateral consequences, I believe, would never be a reason for downward departure in tax cases." The government responds that any defendant who is convicted of tax fraud is subject to tax assessment and potential civil penalty and that Thomas's

"collateral" liability is no different from anyone else's, and thus not deserving of a downward departure. Other than summarily asserting that the district court erred, Thomas has not provided any meaningful argument or authority supporting her position. We need not address those arguments which are undeveloped. *Martinez*, 169 F.3d at 1053 (citing *United States v. Dawn*, 129 F.3d 878, 881 n. 3 (7th Cir.1997)). Therefore, we will not disturb the district court's decision denying Thomas a departure from the guidelines based on the collateral consequences in a tax case.

## III.  CONCLUSION

For the reasons stated herein, we AFFIRM the judgment of the district court.